## THE LOTTIE K. FRIEND v. THE ALBERT N. HUGHES.

(District Court, E. D. Pennsylvania. March 29, 1897.)

COLLISION—VESSEL AT ANCHOR—TUG AND TOW.

> A tug without a proper lookout (having no one exclusively devoted to that duty), and with a heavy schooner in tow on a long hawser, *held* in fault for a collision, while going down Delaware Bay with the tide, of her tow with an anchored vessel, in that she came quite close, nearly head on, a little to the eastward of the anchored vessel, before discovering the situation, and then turned sharply westward, signaling her tow to follow, which the latter could not do soon enough, because of her weight and the influence of the tide.

This was a libel in rem against the tug Albert N. Hughes to recover damages caused by a collision of her tow with the schooner Lottie K. Friend.

Henry R. Edmunds, for libelant.
John F. Lewis and Horace L. Cheyney, for respondent.

BUTLER, District Judge. The suit is for damages from a collision in the Delaware Bay, September 21, 1895. The libelant was at anchor, and is admitted to have been free of fault. The respondent was passing down, towing the schooner "Lawrence" astern, by a long hawser. The latter was heavy, and going with the tide responded tardily to her helm,——requiring two men at the wheel. A short distance above the libelant, and a little eastward, a small vessel was lying at anchor; and another a little further eastward was getting under way. These small vessels the tug and her tow passed safely. The tug also passed the libelant, a short distance to the westward, while the tow swung down and struck her well forward, on the starboard side. The answer, admitting the libelant to have been faultless, charges the tow with responsibility for the collision, alleging that she failed to follow the tug as closely as she should; and this raises the only material question in the case.

The record contains much conflicting testimony, as is usual in such cases. After a careful examination of it I have reached a conclusion adverse to the respondent. To analyze and discuss this testimony would be a useless labor; and I will therefore simply state my conclusions. In addition to the above undisputed facts, I find that the tow followed the course of the tug as closely as she could under the circumstances. Being large and heavy, and going with the tide, she responded slowly to her helm. The small vessel at anchor above the libelant was a little further eastward than she is shown on the draft at page 9 of respondent's brief, and the libelant a little further west-

ward than she is shown. The respondent passed the small vessel with little, if any, change of course, (the tow following pretty directly behind at this time,) and approached the libelant nearly head on, but a little to the eastward, getting quite close before discovering the situation. She then turned sharply westward and signaled the tow to follow. The latter endeavored to do so, but necessarily swung down under the influence of her momentum and the tide, and struck the libelant as above described. She may have been a bad steerer as the tug charges. But if she was, the tug, having towed her before, should have known it and taken precautions accordingly. The respondent was without a proper lookout, having no one exclusively devoted to that duty; and this, doubtless, was the cause of her running so near the libelant before changing her course. The collision was then inevitable, unless, possibly, by turning in the opposite direction. With the change westward the tow would necessarily be brought into collision; there was no chance of escape in attempting to follow. The distance between her and the libelant was too short for any available effort to keep off, especially in view of her speed and the force of the tide. She would necessarily swing down and turn lower than the tug, and thus be drawn into contact with the libelant just as she was.

The allegation that she took a sheer eastward, (on which the defense rests,) as some of the respondent's witnesses assert, cannot be accepted against the evidence to the contrary. Besides, there is nothing to account for such a sheer. If it occurred after the tug turned westward and signaled her to follow, it is wholly unaccountable that she should have turned in the opposite direction. If it occurred before the tug turned westward, then the tug should have gone eastward, as it would have been safe to do. It was perilous to turn westward under such circumstances, and attempt to haul the tow across the libelant's bows; and of itself would render the tug responsible for the collision.

The libel is sustained, and a decree may be prepared accordingly.