BAILEY v. SMITH et al.

SMITH et al. v. BAILEY.

(Circuit Court of Appeals, Eighth Circuit. August 2, 1926.)

Nos. 7394, 7395.

1. **Appeal and error ⬡⟾931(1), 1009(4)—Findings of chancellor are presumably correct, and will not be disturbed unless clearly against weight of evidence or induced by erroneous construction of law.**

The findings of a chancellor are presumptively correct, and will only be disturbed by an appellate court if clearly against the weight of the evidence or induced by an erroneous construction of the law, especially where the evidence was heard orally with opportunity to note the demeanor of the witnesses and their manner of testifying.

**2. Appeal and error ⟐⟐1009(3).**

  Findings of fact made by the chancellor on conflicting evidence sustained.

  Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

  Suit in equity by Fredrick W. Bailey against R. H. Smith and the Oklahoma Company. From the decree both parties appeal. Affirmed.

  The plaintiff, Fredrick W. Bailey, instituted this action against the defendants, claiming an interest in certain oil and gas leases. Some of these are situate in township 7 north, range 7 east, and in township 6 north, range 7 east, more particularly described in Schedule A to the complaint. He also claimed a like interest in certain oil and gas leases of land situate in township 8 north, range 8 east, described in Schedule B to the complaint.

  The material allegations in the complaint are:

  "That prior to January, 1921, plaintiff met the defendant R. H. Smith and had considerable business negotiations and dealings with him in and about oil matters in Oklahoma, including obtaining leases, investigating oil titles, sinking oil wells, and other incidents of the business, and Smith requested plaintiff to secure for him oil properties and propositions for drilling wells for oil.

  "That during January and February, 1921, said Smith carried on negotiations with plaintiff with a view to plaintiff taking part with Smith in getting together oil land leases in Seminole county, Okl., and that vicinity, for oil and gas development, and for selling, exchanging, and dealing in such oil lands, and for development thereof, and for developing, drilling, improving, and operating oil properties, and also for selling, leasing, and dealing in such lands so improved, and improve and operate them as good business would seem to require, oversee drilling operations, and generally actively carry out the field and office labors of the business; the plaintiff to receive $150 per month for his household and personal expenses, and to also have an interest in the adventures. That a reasonable and usual interest in such business in that locality and in the country at large then was and is now, one-eighth, as said parties at the time well knew. That thereupon, an oral agreement and contract to that effect was made between them.

  "That immediately after making such agreement, plaintiff and defendant began and diligently continued the work, and did get leases of such lands and did deal in them and improve and develop many leases, and did dig wells for oil and gas thereon and equip the wells with pipes, pumps, tanks, and all necessary and useful articles usual in first rate oil lease equipment and actual operation and production of oil and gas wells. That in this work plaintiff planned pipe lines, wells, tanks, engines, and other necessary and usual equipment, made blueprints thereof, bought lumber, pipe, casing, and such other material, and at times when said defendant had not the credit to buy nor at the times means to pay therefor, plaintiff bought same on his own personal credit and at times used his own funds to pay for the same, which facts at the time said Smith well knew and always approbated. That later in the business, such advances were returned by the business to the plaintiff with the knowledge and approbation of said Smith. At other times said Smith furnished the money with which plaintiff was to and did make purchases of such material.

  "It was also discussed as part of the business that said Smith would be much of the time in the East engaged in the raising of funds and other parts of the business. The agreement and negotiations were oral. After the agreement was made said Smith gave $400 in cash for expenses and plaintiff at once went to Wewoka, the county seat of Seminole county, and began the work. That active correspondence and telegrams immediately began between them, in which Smith habitually spoke of the property and the persons as 'we' and 'our,' and such usage continued throughout the time the business continued.

  "That after carefully examining the records of the titles of many tracts of lands, and the lands themselves, plaintiff, after much negotiation, in 1921, with many different owners of different interests in said lands and leases, secured several oil and gas lease contracts and assignments on examined ground amounting to about 3,000 acres in township 7 north, range 7 east, and in township 6 north, range 7 east, and in township 7 north, range 8 east, which were all taken by plaintiff in the name of said Smith, descriptions of the land on which they were taken are set out in Exhibit 1, Schedule A, hereto attached as part hereof."

  It then alleges that Smith organized the Oklahoma Company, to whom he assigned the leases set out in Schedule A, but without consideration. That plaintiff secured leases to the lands described in Schedule A in township 7 north, range 7 east.

"That while said plaintiff was so engaged in said enterprise, said defendant Smith, in pursuance of the agreement aforesaid, secured oil and gas leases on divers tracts of land, aggregating about 1,120 acres in township 8 north, range 8 east, in Seminole county, Okl., descriptions of the tracts so leased being set out on said Exhibit 1, Schedule B, hereto attached as part hereof.

"That the prices for these leases was paid from the funds raised for the prosecution of said business, and agreements to develop the leases aforesaid in township 8 north, range 8 east.

"That pursuant to said agreement, plaintiff examined said locality, including said tract so leased.

"That about June 28, 1922, a well for oil was commenced on one of the tracts so leased in said section 33, township 8, range 8 east. That while the work was active, plaintiff was in the field and about the wells as superintendent and general manager of the work. That during the development of these operations, the defendant Smith having exhausted his credit, plaintiff upon his own credit secured a string of casing—about 6 ⅝-inch—through which oil was produced from the well in said section 33—8—8, of which facts said Smith had knowledge. That about March 17, 1923, the oil sand was penetrated in said well drilling in section 33—8—8, and a well brought in which continued increasing in production until it was making approximately 4,000 barrels of oil per day in September, 1923. That other wells were drilled in until the total production approximated 8,000 barrels of oil per day on said leases in 8—8. That the other oil companies were also increasing production, and the only purchasing pipe line company in that field refused to take from said defendant and those with him more than 300 barrels per day. That said Smith and plaintiff then consulted together upon the situation, and pursuant thereto plaintiff proceeded and sold several hundred thousand barrels of the oil through D. G. Bailey, brother of plaintiff, a stranger to the company, and a 55,000 barrel tank for oil storage was also erected and filled. That without plaintiff had so used his knowledge and influence, the loss to the enterprise would have been hundreds of thousands of dollars. That in other ways several hundred thousand barrels of oil were sold by said defendants for hundreds of thousands of dollars and the proceeds appropriated to their own uses. That after said well was drilled in a large casing-head gas plant was erected on said leases in township 8 north, range 8 east, and large quantities of gasoline

were made up to the time of the sale to the Dixie Oil Company, as aforesaid. That it has not been accounted for nor have its proceeds. Plaintiff prays a full accounting for same and an order and decree of return to plaintiff of his share thereof.

"That after the first well came in, in 33—8—8, plaintiff asked of Smith an accounting and statement of his interest in the enterprise, which Smith said would need to wait until he returned from the East, where he must soon go to make a settlement with his associates in the East. That immediately after said well came in said Smith began to seek opportunity to sell the property in section 33—8—8. That about September 10, 1923, without consulting plaintiff, said Smith incorporated the 'Oklahoma Company' under the laws of the state of Delaware, with himself as president and a nominal capital stock of $2,500,000, and transferred to it all the oil leases so held under the leases, contracts, and conveyances aforesaid in said township 8, range 8 east, as set out in Plaintiff's Exhibit 1, Schedule B, being the leases acquired for the venture as aforesaid. That about October 20, 1923, the properties set out in Schedule B aforesaid, so held in the apparent name of the Oklahoma Company, were conveyed and disposed of by said Smith and said Oklahoma Company to the Dixie Oil Company, a corporation, for the price and consideration of $2,800,000.
\* \* \*

"Plaintiff alleges:

"That he has a right to his fair interest in the proceeds of the enterprise so far as the proceeds have developed, and that he is entitled to have his interest declared and decreed in and to the remainder of the property in said enterprise.

"That there have been divers profits which have been made in the progress of the said enterprise which should have been divided between said Smith and this plaintiff, as they were made, but were not divided, and others which should have been divided between them, but were not divided, and the division should have been according to the interest of each in the particular profits that should have been divided. That much of the profits which should have been so divided were used at divers times in divers sums to pay debts of the enterprise and to buy other leases of property for the enterprise.

"That of the above sum received from the Dixie Oil Company, plaintiff was, under said understanding and agreement with said Smith, entitled to an interest of one-eighth or $350,000, with interest at 6 per cent. per annum from October 20, 1923, which plaintiff

prays be decreed to him in this action against said Smith and said Oklahoma Company.

That under said agreement plaintiff is entitled to an interest of one-eighth in that part of the enterprise located in township 7 north, range 7 east, in Seminole county, as aforesaid. That the fair and reasonable cash market value of said interest at this time is the sum of $1,000,000, of which plaintiff's interest is one-eighth, for which plaintiff prays a decree of this court herein against said Smith and the said Oklahoma Company, or that the amount of plaintiff's interest therein be fixed by the decree of this court, with provision that plaintiff's interest be divided out and set apart to him if that is practicable.

"And plaintiff prays that said defendant Smith and said Oklahoma Company be required to account to plaintiff as to the property, leases, and assets which have been received by them, respectively, belonging to or growing out of the said described properties since the 1st day of February, 1921, and that they each be required to produce in this court at a time and times to be fixed by its orders from time to time their books of account showing the transactions, properties, funds, and assets had since the 1st day of February, 1921."

The defendants in their answer state that Smith employed the plaintiff to secure for him oil properties and propositions for drilling wells for oil in township 7 north, range 7 east, and those set out in Schedule A, at a salary equal to the sum total each month of his personal traveling expenses and living expenses of himself and family, and something worth while if defendant got a well, but denies specifically most other allegations. They admit that in June, 1921, Smith and his associates commenced a well in section 33, township 8 north, range 8 east, but deny that plaintiff was engaged on behalf of Smith as superintendent or general manager or in any capacity in that work. It is admitted that on March 17, 1923, oil was discovered in that well, and other wells in that vicinity were drilled, and that the properties set forth in Schedule B (referred to by the parties as in 8—8) were sold for the price of $2,800,000. It is denied that the plaintiff is entitled to one-eighth or any other interest in any of the leases, those set out in Schedule A or Schedule B. They further allege that Smith has paid to the plaintiff for his services, in addition to his traveling expenses and living expenses of himself and family, approximately $6,000.

Upon final hearing a decree was rendered that the plaintiff is entitled to an undivided one-eighth interest in the lands situated in township 6 north, range 7 east, and those in township 7 north, range 7 east, set out in Schedule A, but that he is not entitled to any interest in the leases of lands in township 8 north, range 8 east, the lands described in Schedule B. Both parties appealed.

N. A. Gibson, A. A. Davidson, and J. L. Hull, all of Tulsa, Okl. (H. J. Swarts and West, Gibson, Sherman, Davidson & Hull, all of Tulsa, Okl., on the brief), for Fredrick W. Bailey.

George S. Ramsey, of Tulsa, Okl. (A. J. Lindsay, of New York City, Edgar A. de Meules and Villard Martin, both of Tulsa, Okl., on the brief), for Smith and Oklahoma Co.

Before BOOTH, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

TRIEBER, District Judge (after stating the facts as above). The only questions involved are questions of facts. The alleged contract or agreement sued on was oral. The evidence was oral, although a large number of letters and telegrams between Bailey and Smith was introduced.

The burden of proof was on the plaintiff to establish the alleged contract. Whether it is sufficient to establish it by a mere preponderance of the evidence, or can only be established by evidence which is full, clear, and convincing, it is unnecessary to determine in view of the conclusions reached by the chancellor as well as by us.

[1] The findings of a chancellor, although not entitled to the conclusiveness of the verdict of a jury or of a judge, when in an action at law a jury has been waived by written stipulation of the parties, are presumptively correct, and will only be disturbed by an appellate court if clearly against the weight of the evidence or induced by an erroneous construction of the law. This is especially true, if the evidence was heard orally, with an opportunity to the chancellor to note the demeanor of the witnesses and their manner of testifying.

The learned trial judge made no special findings, but the decree necessarily evidences what findings were made. The evidence was of such a conflicting nature that, on the main issues involved, it is impossible to reconcile it, and there is no room for a contention that the court committed any errors of law.

[2] The findings in favor of the plaintiff as to the leases of lands set out in the Schedule A is supported by substantial evidence, which establishes a joint adventure between the par-

ties as to these lands, and that part of the decree is therefore affirmed.

The finding in favor of the defendants relating to the lands described in Schedule B is sustained, not only by the evidence of Smith but other witnesses. The testimony of Guy Buckner is convincing that these leases were obtained for Smith by Buckner under an agreement between them that Buckner was to receive a one-eighth interest in these leases secured by him for Smith for his services, and he received it. In our opinion there is not sufficient evidence to justify a finding that Bailey had secured any of these leases, or that there was any agreement between him and Smith that he was to secure them.

There is conflicting evidence as to Bailey's services in the drilling of the well in section 33, township 8 north, range 8 east, but the preponderance of the evidence sustains the finding of the chancellor that he rendered no such services as claimed by him. It will serve no useful purpose to set out the voluminous evidence, as a careful reading of it satisfies that the findings are sustained by the great preponderance of the testimony, and therefore the decree on the cross-appeal should also be and is affirmed. Neither party to recover costs.