UNITED STATES *v.* NINETY-FIVE BARRELS, MORE OR LESS, ALLEGED APPLE CIDER VINEGAR, DOUGLAS PACKING COMPANY, CLAIMANT.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 559.   Argued April 10, 11, 1924.—Decided June 2, 1924.

1. The purpose of the Food and Drugs Act in forbidding misbranding is to prevent the use of misleading statements as well as those which are false. P. 442.
2. Vinegar made from dried apples by adding water equivalent to that removed in the drying and fermenting the resulting solution, even though it be similar to vinegar produced directly from fresh apple cider and equally wholesome, is not the same thing; and a label describing it as " apple cider vinegar made from selected apples " is misleading to the public, and a misbranding within the meaning of the Food and Drugs Act. P. 443.

289 Fed. 181, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals which reversed a judgment of the District Court condemning divers barrels of vinegar under the Food and Drugs Act.

*Mr. J. A. Fowler,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

*Mr. L. C. Spieth,* with whom *Mr. John G. White* and *Mr. A. V. Cannon* were on the brief, for respondent.

*Mr. Judson Harmon,* by leave of Court, filed a brief as *amicus curiae.*

*Mr. Wm. W. Armstrong,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE BUTLER delivered the opinion of the Court.

This case arises under the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768. The United States filed information in the District Court for the Northern District of Ohio, Eastern Division, for the condemnation of 95 barrels of vinegar. Every barrel seized was labeled:

" Douglas Packing Company
Excelsior Brand Apple Cider Vinegar made
from Selected Apples
Reduced to 4 Percentum
Rochester, N. Y."

The information alleged that the vinegar was adulterated, in violation of § 7 of the act. It also alleged that the vinegar was made from dried or evaporated apples, and was misbranded in violation of § 8, in that the statements on the label were false and misleading, and in that it was an imitation of and offered for sale under the distinctive name of another article, namely apple cider vinegar.

The Douglas Packing Company appeared as claimant, and by its answer admitted that the vinegar was labeled as alleged, and that evaporated apples had been used in its manufacture. It averred that nevertheless it was pure cider vinegar and denied adulteration and misbranding. A jury was waived, and the case was submitted on the pleadings and an agreed statement of facts. The court found that the charge of adulteration was not sustained, but held that the vinegar was misbranded. Claimant appealed, and the Circuit Court of Appeals reversed the judgment. 289 Fed. 181. Certiorari was allowed. 263 U. S. 695.

The question for decision is whether the vinegar was misbranded.

The substance of the agreed statement of facts may be set forth briefly. Claimant is engaged in the manufacture of food products from evaporated and unevaporated apples. During the apple season, from about September 25 to December 15, it makes apple cider and apple cider vinegar from fresh or unevaporated apples. During the balance of the year, it makes products which it designates as " apple cider " and " apple cider vinegar " from evaporated apples. The most approved process for dehydrating apples is used, and, in applying it, small quantities of sulphur fumes are employed to prevent rot, fermentation, and consequent discoloration. The principal result of dehydration is the removal of about 80 per cent. of the water. Whether, and to what extent, any other constituents of the apple are removed is not beyond controversy; in the present state of chemical science, no accepted test or method of analysis is provided for the making of such determination. Only mature fruit, free from rot and ferment, can be used economically and advantageously.

In manufacturing, claimant places in a receptacle a quantity of evaporated apples to which an amount of pure water substantially equivalent to that removed in the evaporating process has been added. A heavy weight is placed on top of the apples and a stream of water is introduced at the top of the receptacle through a pipe and is applied until the liquid, released through a vent at the bottom, has carried off in solution such of the constituents of the evaporated apples as are soluble in cold water and useful in the manufacture of vinegar. Such liquid, which is substantially equivalent in quantity to that which would have been obtained had unevaporated apples been used, carries a small and entirely harmless quantity of sulphur dioxide, which is removed during the process of fining and filtration by the addition of barium carbonate or some other proper chemical agent. The liquid is then subjected to alcoholic and subsequent

acetic fermentation in the same manner as that followed by the manufacturer of apple cider vinegar made from the liquid content of unevaporated apples. Claimant employs the same receptacles, equipment and process of manufacturing for evaporated as for unevaporated apples, except that in the case of evaporated apples, pure water is added as above described, and in the process of fining and filtration, an additional chemical is used to precipitate any sulphur compounds present and resulting from dehydration.

The resulting liquid, upon chemical analysis, gives results similar to those obtained from an analysis of apple cider made from unevaporated apples, except that it contains a trace of barium incident to the process of manufacture. Vinegar so made is similar in taste and in composition to the vinegar made from unevaporated apples, except that the vinegar made from evaporated apples contains a trace of barium incident to the process of manufacture. There is no claim by libellant that this trace of barium renders it deleterious or injurious to health. It was conceded that the vinegar involved in these proceedings was vinegar made from dried or evaporated apples by substantially the process above described. There is no claim by the libellant that the vinegar was inferior to that made from fresh or unevaporated apples.

Since 1906, claimant has sold throughout the United States its product manufactured from unevaporated as well as from evaporated apples as " apple cider " and " apple cider vinegar ", selling its vinegar under the brand above quoted, or under the brand " Sun Bright Brand apple cider vinegar made from selected apples ". Its output of vinegar is about 100,000 barrels a year. Before and since the passage of the Food and Drugs Act, vinegar in large quantities, and to a certain extent a beverage, made from evaporated apples, were sold in various parts of the United States as " apple cider vinegar " and " apple

cider," respectively, by many manufacturers. Claimant, in manufacturing and selling such products so labeled, acted in good faith. The Department of Agriculture has never sanctioned this labeling, and its attitude with reference thereto is evidenced by the definition of "apple cider vinegar" set forth in Circulars 13, 17, 19 and 136, and Food Inspection Decision 140.[1]   It is stipulated that the juice of unevaporated apples when subjected to alcoholic and subsequent acetous fermentation is entitled to the name "apple cider vinegar."

Section 6 of the act provides that, "  .  .  .   The term 'food', as used herein, shall include all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound."   Section 8 provides, " That the term 'misbranded', as used herein, shall apply to all  .  .  .   articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular,  .  .  .   That for the purposes of this Act an article shall also be deemed to be misbranded:  .  .  .   In the case of food: First. If it be an imitation of or offered for sale under the distinctive name of another article.   Second.   If it be labeled or branded so as to deceive or mislead the purchaser,  .  .  . Fourth.   If the package containing it or its label shall bear any statement, design, or device regarding the ingredients or the substances contained therein, which statement, design, or device shall be false or misleading in any particular.  .  .  ."

The statute is plain and direct. Its comprehensive terms condemn every statement, design and device which

---

[1] The definition referred to is, " Vinegar, cider vinegar, apple vinegar, is the product made by the alcoholic and subsequent acetous fermentations of the juice of apples.  .  .  ."

may mislead or deceive.   Deception may result from the use of statements not technically false or which may be literally true.   The aim of the statute is to prevent that resulting from indirection and ambiguity, as well as from statements which are false.   It is not difficult to choose statements, designs and devices which will not deceive. Those which are ambiguous and liable to mislead should be read favorably to the accomplishment of the purpose of the act.   The statute applies to food, and the ingredients and substances contained therein.   It was enacted to enable purchasers to buy food for what it really is. *United States* v. *Schider,* 246 U. S. 519, 522; *United States* v. *Lexington Mill Co.,* 232 U. S. 399, 409; *United States* v. *Antikamnia Co.,* 231 U. S. 654, 665.

The vinegar made from dried apples was not the same as that which would have been produced from the apples without dehydration.   The dehydration took from them about 80 per cent. of their water content,—an amount in excess of two-thirds of the total of their constituent elements.   The substance removed was a part of their juice from which cider and vinegar would have been made if the apples had been used in their natural state.   That element was not replaced.   The substance extracted from dried apples is different from the pressed out juice of apples.   Samples of cider fermented and unfermented made from fresh and evaporated apples, and vinegar made from both kinds of cider were submitted to and examined by the District Judge who tried the case.   He found that there were slight differences in appearance and taste, but that all had the appearance and taste of cider and vinegar. While the vinegar in question. made from dried apples was like or similar to that which would have been produced by the use of fresh apples, it was not the identical product.   The added water, constituting an element amounting to more than one-half of the total of all in-

gredients of the vinegar, never was a constituent element or part of the apples. The use of dried apples necessarily results in a different product.

If an article is not the identical thing that the brand indicates it to be, it is misbranded. The vinegar in question was not the identical thing that the statement "Excelsior Brand Apple Cider Vinegar made from selected apples", indicated it to be. These words are to be considered in view of the admitted facts and others of which the court may take judicial notice. The words "Excelsior Brand", calculated to give the impression of superiority, may be put to one side as not liable to mislead. But the words, "apple cider vinegar made from selected apples" are misleading. Apple cider vinegar is made from apple cider. Cider is the expressed juice of apples and is so popularly and generally known. See *Eureka Vinegar Co.* v. *Gazette Printing Co.*, 35 Fed. 570; *Hildick Apple Juice Co.* v. *Williams*, 269 Fed. 184; *Monroe Cider Vinegar & Fruit Co.* v. *Riordan,* 280 Fed. 624, 626; *Sterling Cider Co.* v. *Casey,* 285 Fed. 885; affirmed 294 Fed. 426. It was stipulated that the juice of unevaporated apples when subjected to alcoholic and subsequent acetous fermentation is entitled to the name "apple cider vinegar". The vinegar in question was not the same as if made from apples without dehydration. The name "apple cider vinegar" included in the brand did not represent the article to be what it really was; and, in effect, did represent it to be what it was not,—vinegar made from fresh or unevaporated apples. The words "made from selected apples" indicate that the apples used were chosen with special regard to their fitness for the purpose of making apple cider vinegar. They give no hint that the vinegar was made from dried apples, or that the larger part of the moisture content of the apples was eliminated and water substituted therefor. As used

on the label, they aid the misrepresentation made by the words " apple cider vinegar ".

The misrepresentation was in respect of the vinegar itself, and did not relate to the method of production merely.   When considered independently of the product, the method of manufacture is not material.   The act requires no disclosure concerning it.   And it makes no difference whether vinegar made from dried apples is or is not inferior to apple cider vinegar.

The label was misleading as to the vinegar, its substance and ingredients.   The facts admitted sustain the charge of misbranding.

*Judgment reversed.*