63 F.Supp. 286 (1945)
UNITED STATES
v.
681 CASES, MORE OR LESS, CONTAINING "KITCHEN KLENZER".
No. 2931.
District Court, E. D. Missouri, E. D.
November 19, 1945.
Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., for United States of America.
Adams, Moses & Culver, of Chicago, Ill., and Fordyce, White, Mayne, Williams & Hartman, Walter R. Mayne, and Joseph R. Long, all of St. Louis, Mo., for claimant, Fitzpatrick Bros., Inc.
MOORE, District Judge.
This is a libel filed by the United States under The Insecticide Act, Title 7, U.S. C.A. § 121 et seq., against 681 cases, more or less, each containing 40 13-ounce cans of "Kitchen Klenzer". The libel is based on and alleges that said Kitchen Klenzer was intended to be used as a "fungicide" within the meaning of the Act and that it was misbranded under the Act for two reasons: (1) that it consisted of inert ingredients and the percentage thereof is not shown; and (2) that certain statements appearing on the label of the can were false and misleading.
The cans in question are cylindrical in shape, about five inches high and nine and one-half inches in circumference. Covering the entire side surface of the can is a paper label, which states at the top the name "Kitchen Klenzer", and contains below a picture of a woman admiring her reflection in a freshly scoured pan, and various other writings. On the bottom of the label on both sides, immediately under the picture, are the words in red on a white background "Remove Germs As You Clean", and to the right of those words are the words "Use Kitchen Klenzer for ANTISEPTION! (Antiseptic Action)". The last phrase is in blue ink except for the capitalized word "ANTISEPTION!", which is in red ink.
In a thin strip on one side of the can, in a red background and reading vertically, are the words "Kitchen Klenzer cleans antiseptically Bath Tubs Faucets Linoleum Sinks Stoves Steel Knives Pots, Pans Kettles Kitchen Floors Refrigerators", etc. On the other side of the can, also on a red background and reading vertically, are the words "The Proved Cleanser That Cleans Faster Lasts Longer  Recommended Especially for Bath Rooms Porcelain Enamelware  Adopted by Hospitals For Cleaning Operating Rooms Surgical Instruments Tables Marble Floors Mosaic, Tile".
The manufacturer of Kitchen Klenzer and claimant in this libel is Fitzpatrick Brothers of Chicago, Illinois. They base their claim to the release of the libeled product upon the ground that Kitchen *287 Klenzer is not a fungicide within the meaning of the Insecticide Act and was not and could not have been misbranded. The evidence has shown (and both parties admit) that Kitchen Klenzer is made up entirely of inert substances and has no action other than a scouring action similar to that contained in many other commercial scouring powders. The claimant, therefore, bottoms its case principally on this admission that Kitchen Klenzer is not in fact a fungicide or, in other words, will not kill fungi. Therefore, the issue presented is whether, in spite of the fact that Kitchen Klenzer is admittedly not a fungicide, it can still come within the jurisdiction of the Insecticide Act.
Title 7 U.S.C.A. § 126 provides in part that: "The introduction into any State or Territory or the District of Columbia from any other State or Territory or the District of Columbia, or from any foreign country, or shipment to any foreign country, of any insecticide, or Paris green, or lead arsenate, or fungicide which is adulterated or misbranded within the meaning of this chapter is hereby prohibited." (Emphasis the Court's.)
Section 133 provides for the libeling of any such product and Section 122 of the Act gives the following definition of a fungicide: "The term `fungicide' as used in this chapter shall include any substance or mixture of substances intended to be used for preventing, destroying, repelling, or mitigating any and all fungi that may infest vegetation or be present in any environment whatsoever." (Emphasis the Court's.)
Thus under the Act the issue is whether Kitchen Klenzer is a fungicide depends on whether it is a "substance * * * intended to be used for preventing, destroying, repelling, or mitigating any and all fungi." To answer this the court must determine two questions: first, whether Congress intended to include in the scope of the Act any substances except ones that were actual working insecticides or fungicides, or, stated another way, whether the coverage of the Act is broad enough to include a product not in fact a fungicide, which holds itself out to be one; and (2) whether, if the coverage of the Act is broad enough, the particular product here has, as a matter of fact, held itself out or purported to be a fungicide.
The first problem is relatively easy of solution. In the Insecticide Act Congress did not merely prohibit the misbranding or adulteration of products which were in fact fungicides. It went further and included things which were "intended to be used" as fungicides. This court does not believe that when it used the word "intended" Congress spoke ill-advisedly, or had in mind the manufacturer's subjective intent as to the products' efficacy. The act was passed for the protection of the public, and a reading of the entire chapter convinces that Congress intended that the public be protected not only from misbranded actual fungicides, but from the misbranding or adulteration of all matters holding themselves out to be fungicides, and employed the words "intended to be used" in reference to objective intent as evidenced by what the product holds itself out to be. Any other construction of this Statute would lead to the absurd result that a manufacturer could actually label his product a fungicide and yet avoid the application of the Act by reservations and his own knowledge of its inefficacy.
The second question, as to whether any, all or the combination of words employed on these labels amount to evidence of an objective intent that said Kitchen Klenzer be used as a fungicide, requires an analysis of the thought conveyed. The label states "Remove Germs As You Clean" and "Use Kitchen Klenzer for ANTISEPTION! (Antiseptic Action)". Do these words, either used singly or in combination, hold forth that Kitchen Klenzer is an effective fungicide? The court believes that they do and would be so taken by the general public regardless of what claimant's intent may have been.
The Insecticide Act empowers the Secretaries of the Treasury, Agriculture and Commerce to make rules and regulations to carry out its provisions, and pursuant to that power a regulation has been promulgated to define "fungi". It reads: "`Fungi' means all nonchlorophyll-bearing plants of a lower order than mosses and liverworts (i. e. nonchlorophyll-bearing thallophytes), as, for example, rusts, smuts, mildews, molds, yeasts, and bacteria."
From this definition it can be seen that "fungi" includes bacteria, and the expert evidence introduced in this case conclusively authenticated the regulations in this. Therefore, anything that prevents, destroys, repels or mitigates bacteria would be a fungicide. The label refers, however, to germs and antiseption. A "germ", in the *288 popular sense, is certainly a reference to bacteria, and to say "Remove Germs As You Clean" is certainly an intimation that the product will eradicate bacteria or fungi. The claimant, Fitzpatrick Brothers, however, argues in defense of this sentence that any scouring matter removes germs, in the sense that it displaces them from one locale to another, but that that sentence does not say that the germs will be destroyed as by a fungicide. But looking at the sentence as a whole the court believes that there is a very definite implication in it that the germs (meaning bacteria) will be more than displaced. The word "Remove" is frequently used in the sense of "to get rid of" or "to eradicate", as in the illustrative sentence given by Webster, "to remove the causes of poverty". Thus read, to say a thing removes germs would be tantamount to saying it prevents, destroys, repels, or mitigates them within the meaning of the Statute.
But these words are not alone or the most obnoxious ones. The references to "ANTISEPTION! (Antiseptic Action)", to "antiseptically", and to the product's hospital users, appears to the court even more of a representation that the product will destroy bacteria or fungi. Webster's New International Dictionary defines "Antiseption" as the medical for "Antisepsis", and defines "Antisepsis" as "the process of inhibiting the growth and multiplication of microorganisms; the prevention of sepsis by antiseptic means. Cf. Sterilization, Disinfection, Asepsis."
"Antiseptic" is further defined by that dictionary as "A substance that opposes sepsis, putrefaction, or decay; one that prevents or arrests the growth or action of microorganisms, either by inhibiting their activity or by destroying them;  used especially of agents applied to living tissue. Cf. Disinfectant, Germicide."
The words are certainly on the label for some purpose, and to the court they most certainly convey a meaning that Kitchen Klenzer will do more than scour. In Bradley v. United States, 264 F. 79, 81, referring to a label on a bottle, the Fifth Circuit Court of Appeals very aptly said: "Unless this means that the water did contain elements or ingredients which would alleviate or cure the diseases named, when taken according to the directions thereon contained, it was a waste of printer's ink."
Paraphrasing this, the court is at a loss to know why the claimant would waste printer's ink (and some of it red) unless some inference was sought by this label over and beyond that of a pure cleaning agent. The court is aware that many people might know that Kitchen Klenzer is inert and would not be fooled by the label, but the fact that the untruth may be patent to some and may not mislead the person of discernment is, of course, no defense if the product is in fact misbranded. This court, however, can very well conceive how a not unreasonable person, relying on this label, might erroneously employ the accused product for disinfecting dishes from a sickroom, or some such inappropriate use. The Supreme Court of the United States, in United States v. Ninety Five Barrels of Vinegar, 265 U.S. 438, 44 S.Ct. 529, 531, 68 L.Ed. 1094, a case under the Food and Drug Act, said: "The statute is plain and direct. Its comprehensive terms condemn every statement, design, and device which may mislead or deceive. Deception may result from the use of statements not technically false or which may be literally true. The aim of the statute is to prevent that resulting from indirection and ambiguity, as well as from statements which are false. It is not difficult to choose statements, designs, and devices which will not deceive. Those which are ambiguous and liable to mislead should be read favorably to the accomplishment of the purpose of the act. The statute applies to food, and the ingredients and substances contained therein. It was enacted to enable purchasers to buy food for what it really is." (Emphasis supplied.)
The reasoning there can well be applied to the case of Kitchen Klenzer, although the court is of the opinion that the deception here is neither indirect or ambiguous, but clear and direct.
The court therefore holds that the accused cans of Kitchen Klenzer are fungicides and within the jurisdiction of the Act, and since they do not bear on their labels the names and amounts of inert ingredients, as required by 7 U.S.C.A. § 131, are as a matter of law misbranded. In addition, however, the court is of the opinion that even were the inert ingredients stated on the labels, for the reasons previously discussed, misbranding would be present because the labels deceive or mislead within the meaning of that part of the Act which *289 reads: "* * * For the purpose of this chapter an article shall be deemed to be misbranded * * * in the case of * * * fungicides * * * if it be labeled or branded so as to deceive or mislead the purchaser. * * *" 7 U.S.C.A. § 131.
Therefore, a judgment will be entered overruling the claim of Fitzpatrick Brothers and ordering the product condemned. Counsel will forthwith submit Findings of Fact and Conclusions of Law and a proper Decree for approval and signature.