## UNITED STATES v. WEINREB et al.

United States District Court
S. D. New York.
May 18, 1951.

6. Captain Marryat; Midshipman Easy.

Irving H. Saypol, U. S. Atty., New York City, Gerome J. Leone, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Morris M. Marcus, Brooklyn, N. Y., for defendants.

GODDARD, District Judge.

The defendants move (1) to dismiss an information, and (2) to suppress evidence.

The information contains nine counts and charges the defendants with violating the Federal Insecticide, Fungicide, and Rodenticide Act, 61 Stat. 163, Title 7 United States Code Annotated, §§ 135–135k, when they made four shipments of alleged "economic poisons" in December, 1949, and in January, 1950.

The defendants contend that this statute is invalid (1) because it is too vague, indefinite, obscure and uncertain, and (2) because it delegates to the Secretary of Agriculture the power to determine what shall constitute a crime without setting up a standard or policy to be followed by the Secretary.

An inspection of the statute shows clearly that these contentions are without merit. The defendants are charged specifically with violating Title 7 United States Code Annotated, §§ 135, 135a(a) (1), 135a(a) (2) (a), 135a(a) (2) (c), 135a(a) (5) and 135b, in that they failed to register an "economic poison" with the Secretary of Agriculture and that the said "economic poison" was misbranded and adulterated and not properly labeled.

■ The crimes are defined with appropriate definiteness and men of common intelligence can easily determine the statute's meaning. It is therefore not invalid for indefiniteness. Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840.

The defendants urge that since six of the counts alleged that the alleged economic poisons delivered for shipment consisted of "a disinfectant", and, since the word "disinfectant" is not used in the statute, the statute was not intended to apply to the shipments in question.

■ However, the mere fact that the defendants labelled their product "disinfectant" cannot take it out of the reach of the statute. See United States v. 681 Cases, More or Less, Containing "Kitchen Klenzer", D.C.Mo., 1945, 63 F.Supp. 286. The label states in large print "kills germs". Also on the label are the words "An Effective Repellant To Insects and Vermin". Thus; the label itself shows clearly that the product in question was an "economic poison" within the meaning of Section 135 of the statute; i. e., that it was a "substance or mixture of substances intended for preventing, destroying, repelling, or mitigating * * * insects, * * *, fungi, * * *".

Moreover, the Secretary of Agriculture has issued a regulation which specifically provides that a "disinfectant" is a "fungicide" and therefore an "economic poison". 7 C.F.R. (1949 ed.) Section 162.2.

■ The Secretary was authorized to issue this regulation by Title 7 United States Code Annotated, § 135d.

■ The Congress could delegate this power. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. The statute set forth the necessary policy and standard to be followed.

■ This construction, followed since the statute's enactment, is entitled to great weight as a construction of the scope of the statute by the agency administering the provisions of the statute and expert in its meaning. Spring City Foundry Co. v. Commissioner of Internal Revenue, 1934, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200;

Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700.

■ The regulation is reasonable and logical. Funk and Wagnall's New Standard Dictionary of the English Language defines "disinfectant" as follows: " * * * a substance used to disinfect or to destroy the germs of infectious and contagious diseases * * * ". It is obvious that a disinfectant is the type of substance that the Congress intended to be covered by this statute and is an "economic poison".

■ The defendants also contend that the exceptions set forth in the statute, Section 135(a), "except viruses on or in living man or other animals", should have been alleged in the information. McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301, clearly refutes this contention.

■ The defendants also claim that the information is invalid since it did not state that the shipments in question were made in interstate commerce. However, the information did state that "at the Southern District of New York, Samuel Weinreb and Joseph Zimmerman, the defendants, did deliver for shipment to M. Halper and Sons, Newark, New Jersey". That is sufficient. Tatum v. United States, 71 App. D.C. 393, 110 F.2d 555.

The defendants also move to suppress any and all evidence obtained by the government as a result of the inspection made of defendants' books and records by agents of the Department of Agriculture.

The statute, Title 7 United States Code Annotated, § 135c, requires anyone dealing in "economic poisons" to allow agents of the Department of Agriculture to have access to their records. The last sentence of this section provides: "Notwithstanding this provision, however, the specific evidence obtained under this section shall not be used in a criminal prosecution of the person from whom obtained."

■ It must be noted that just the *specific* evidence obtained at the inspection itself is not to be so used. The government says that it does not have any such information. This statute does not pre-

clude the use of evidence obtained from visits to consignees, etc., even though the name, address, etc., of the consignee was obtained through inspecting the books of the defendants.

The motion to dismiss the information is denied..

 The motion to suppress evidence is granted as to the specific evidence obtained, if any, during the actual inspection of defendants' books..