BENNETT et al. v. FEDERAL TRADE
COMMISSION.

No. 11379.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 3, 1952.

Decided Nov. 28, 1952.

John J. Byrne, Washington, D. C., for petitioners.

Alan B. Hobbes, Attorney, Federal Trade Commission, Washington, D. C., with whom W. T. Kelley, General Counsel, Federal Trade Commission, and Robert B. Dawkins, Assistant General Counsel, Federal Trade Commission, Washington, D. C., were on the brief, for respondent.

Before EDGERTON, PRETTYMAN, and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

This is a petition to set aside a cease and desist order of the Federal Trade Commission. 52 Stat. 111–113, 15 U.S.C.A. § 45.

Petitioners' business consists largely though not entirely of locating delinquent debtors, and getting information from them, by what is called a mail "skip tracer". The debtors and also petitioners' customers are located throughout the United States.

Customers sign petitioners' form requesting petitioners to get information, to pay ten cents for it, and to deposit ten cents to the debtor's credit and charge the customer's account. Petitioners then mail the following form letter, together with a self-addressed return envelope and a questionnaire, to each person named by a customer: "If you will fill in the inclosed blank giving the requested information we will forward you a check for a small sum of money deposited with us for you for that purpose. Very truly yours, Robert Bennett". The letter is headed, and the questionnaire is addressed to, "The National Service Bureau Washington, D. C." Neither the letter nor the questionnaire says anything about a debt or a creditor. The questionnaire begins: "Below is the required information.. Please send the check." The required information includes name, address, occupation, employer's name and address, husband's or wife's name and employer, home telephone, business telephone, bank, and names and addresses of two references. In response to a completed questionnaire petitioners mail their check for ten cents.

Petitioners formerly used the words "Disbursement Officer" after the signature of Robert Bennett on their letter, and the words "Disbursement Office" in the corner of the return envelopes, but ceased to do so after the Commission issued its complaint against them.

The Commission found that petitioners' use of the combined words "National", "Service", and "Bureau", with a Washington address, represents that petitioners are connected with the United States government. The Commission found that petitioners, by saying they will on receipt of the requested information send "a check for a small sum of money deposited with us for you", represent "that a small but significant sum of money to which the recipient of the letter is entitled has been deposited * * * and that this money will be forwarded to the recipient of the letter upon his furnishing sufficient information by means of which he can be identified as the person entitled to the money. * * * In fact [petitioners] are not connected with the United States Government in any respect. No sum of money to which any recipient of these letters is entitled has been deposited * * * and no sum of money has been forwarded * * * other than [the] check for ten cents. * * * This practice is a transparent scheme to mislead and conceal the purpose for which the information is sought."

The Commission therefore found that petitioners were using unfair and deceptive practices in commerce within the meaning of the Federal Trade Commission Act and ordered them to cease (1) using the name "The National Service Bureau" or any other words which might imply that they are connected with the United States government or that their business is other than selling credit information; (2) representing that money has been deposited to the credit of persons questioned unless the money has in fact been deposited and the amount is expressly stated; and (3) using any forms, questions or other materials which do not clearly state that the information is to be used for credit purposes.

Words mean what they are intended and understood to mean. "Deception may result from the use of statements not technically false or which may be literally true." United States v. 95 Barrels of Vinegar, 265 U.S. 438, 443, 44 S.Ct. 529, 531, 68 L.Ed. 1094. Petitioners themselves point out to prospective customers that "Washington, D. C., the nation's capital" is "the psychological city from which to send skip tracer mail". And the Commission might well find as it did in effect that, in the context of "deposited" and "a check", ten cents is not a "sum of money" or even "a small sum of money"; that "a small sum of money" in this context is, at least, a substantial number of dollars. A check for ten cents may net the debtor less than nothing, since some banks charge ten cents for depositing a check and the debtor pays the postage on his questionnaire.

The fraudulent nature of petitioners' scheme is not only plain on its face but proved by its results. Letters in the record show directly that some debtors are deceived. Even more important, petitioners send out about 2100 letters a week and get about 700 replies, all from debtors who have failed to reply to letters from their creditors. It would be fantastic to suggest that one delinquent and previously unresponsive debtor out of three would reply if he thought he was furnishing information to his creditor for a net return, if any, of less than ten cents. There can be no reasonable doubt, and petitioners plainly do not doubt, that if they used the words "ten cents" they would get few replies. Their letter succeeds in conveying the false impression it must convey in order to achieve its purpose.

The Commission's order is valid and will be enforced.

Affirmed.