Gabrielli, J.
(dissenting). I respectfully dissent and vote to reverse the order of Appellate Term and reinstate the judgment of Tuckahoe Village Court convicting defendant Mobil Oil Corp. of violating section 3 of Local Law No. 9 of the Local Laws of 1974 of the County of Westchester. At issue in this appeal is whether a local law which imposes reasonable restrictions upon the advertisement of gasoline prices by means of signs posted in service stations violates either the free speech guarantee of the First Amendment to the United States Constitution or the due process clause of the Fourteenth Amendment. I would hold that it does not.
Local Law No. 9 constitutes an attempt to regulate the advertisement of gasoline prices so as to prevent fraudulent or deceptive sales techniques and to ensure that the consumer will receive the basic price data necessary to support an informed decision whether to purchase gasoline at a particular gasoline station. As such, it is entirely constitutional.
Although it is indeed true that commercial speech such as advertising is entitled to First Amendment protection, it is equally true that the degree of protection accorded commercial speech is somewhat more limited than that normally afforded more political or personal expressions (see, e.g., Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 770-773, esp n 24; Linmark Assoc. v Willingboro, 431 US 85, *203 98; Ohralik v Ohio State Bar Assn., 436 US 447, 455-456; Friedman v Rogers, 440 US 1, 7-13, 15-16). This is so for several reasons. For one thing, commercial speech is firmly founded upon the profit motive. As such, it is inherently hardier than other forms of speech which require greater protection. As the Supreme Court stated in Virginia Pharmacy Bd. v Virginia Consumer Council (425 US, at p 772, n 24, supra):
"[C]ommercial speech may be more durable than other kinds. Since advertising is the sine qua non of commercial profits, there is little likelihood of its being chilled by proper regulation and forgone entirely.
"Attributes such as these, the greater objectivity and hardiness of commercial speech, may make it less necessary to tolerate inaccurate statements for fear of silencing the speaker. Compare New York Times Co. v. Sullivan, 376 U.S. 254 (1964), with Dun & Bradstreet, Inc. v. Grove, 404 U.S. 898 (1971). They may also make it appropriate to require that a commercial message appear in such a form, or include such additional information, warnings, and disclaimers, as are necessary to prevent its being deceptive. Compare Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241 (1974), with Banzhaf v. FCC, 132 U.S. App. D.C. 14, 405 F.2d 1082 (1968), cert, denied sub nom. Tobacco Institute, Inc. v. FCC, 396 U.S. 842 (1969). Cf. United States v. 95 Barrels of Vinegar, 265 U.S. 438, 443 (1924) ('It is not difficult to choose statements, designs and devices which will not deceive’). They may also make inapplicable the prohibition against prior restraints. Compare New York Times Co. v. United States, 403 U.S. 713 (1971), with Donaldson v Read Magazine, 333 U.S. 178, 189-191 (1948); FTC v Standard Education Society, 302 U.S. 112 (1937); E.F. Drew & Co. v FTC, 235 F.2d 735, 739-740 (CA2 1956), cert, denied, 352 U.S. 969 (1957).”
Moreover, commercial speech is somewhat less directly related to the interests normally protected by the First Amendment, since it has no real connection with either the freedom of individual self-expression or that freedom of political expression which together comprise the foundation of our society and our form of government (see Jackson and Jeffries, Commercial Speech: Economic Due Process and the First Amendment, 65 Va L Rev 1, 9-14).
The first two sections of Local Law No. 9 require any retail seller of gasoline to place upon each gasoline pump a sign *204 which clearly indicates the price of the gasoline. The requisite sign must be placed so as to be visible from each approach curb providing access to the station from the street, and the local law also prescribes a minimum size for the lettering on this sign so as to ensure its visibility to passing motorists. Additionally, the local law requires that certain basic pricing information must be provided on the sign: the gasoline dealer is required to state the basic price per gallon, the amount of Federal, State and local taxes assessed against each gallon, and the total price per gallon to the consumer. Moreover, the sign must also indicate the brand and quality of gasoline sold at each pump. In short, the local law is very carefully tailored to ensure that a passing motorist will be provided with the basic pricing information necessary to support an intelligent decision whether to purchase gasoline at a particular service station.
Section 3 of the local law, the section which defendant was convicted of violating, proscribes any signs concerning gasoline prices other than those prescribed by sections 1 and 2. Section 4 provides additional protection to the consumer by prohibiting any other practice which might "deceive or tend to deceive the purchaser as to the price, nature, quality or identity” of gasoline sold at a particular station. The majority of this court appears to have some difficulty in understanding the way in which these two sections supplement each other. It is actually quite simple: both are aimed at practices perceived by the Westchester County Legislature to be potentially deceptive. Section 3 is intended to prevent a specific evil which the Westchester County Legislature deemed to be especially troublesome: namely, the use of an overabundance of signs so as to prevent the actual reception of the necessary data by the consumer. Section 4, on the other hand, constitutes a more general proscription against deceptive conduct. It is based on legislative recognition of the unfortunate fact that "[ingenuity keeps pace with greed” (People v Kibler, 106 NY 321, 324). Rather than attempting the impossible task of listing every conceivable device which could be utilized by an unscrupulous gasoline dealer to deceive potential customers, the Westchester County Legislature deemed it advisable to enact a general prohibition against deceptive and misleading practices as a supplement to the more specific provisions of section 3. Unlike the majority, I find no inconsistency between a local law which prohibits all deceptive practices and one which addir *205 tionally delineates certain practices which are to be forbidden altogether.
So viewed, it is apparent that section 3 constitutionally prohibited defendant’s action in posting a sign advising passing motorists to "Check Our Low Low Low Prices”. The Supreme Court has clearly noted, time and time again, that commercial speech is entitled to a lesser degree of protection than that afforded other types of speech and may be regulated to ensure accuracy and prevent fraud (see, e.g., Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 770-773, esp n 24, supra; Linmark Assoc. v Willingboro, 431 US 85, 98, supra; Ohralik v Ohio State Bar Assn., 436 US 447, 455-456, supra; Friedman v Rogers, 440 US 1, 7-13, 15-16, supra). Indeed, in Virginia Pharmacy Bd., the court explicitly declared that the First Amendment "does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely” (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 772, supra).
It appears evident that the extent of permissible regulation of commercial speech will vary with such factors as the sophistication of the audience at whom the speech is aimed and the nature of the medium by which the speech is transmitted (see Bates v State Bar of Ariz., 433 US 350, 383-384). I note, moreover, that there certainly exists no bar to the reasonable regulation of the time, place and manner of commercial speech.
In reviewing the validity of a First Amendment challenge to a local law which regulates commercial speech, it is necessary first to carefully examine the nature and extent of the protections accorded commercial speech by the First Amendment. Commercial speech has been provided such protection not because it involves any political expression, nor because it is deemed to comprise a mode of self-expression, but rather because of the importance of the free flow of price information to our society. Thus, in every case in which the Supreme Court has found a regulation of commercial speech to be improper, that conclusion was premised on the fact that the regulation deemed to be invalid served to impede the flow of accurate information to the consumer. The local law at issue in this case, however, has the very opposite effect: instead of limiting information, it ensures the availability of such information in an easily understood form. Hence, it in no way *206 impinges upon the First Amendment protections afforded commercial speech.
The nature of the particular marketplace in which an attempt is made to regulate commercial speech will necessarily be significant in assessing the constitutionality of such regulation. In the instant case, the validity of the challenged local law must be considered in light of the somewhat unique conditions which surround the sale of gasoline to the public. The decision to purchase gasoline at one station rather than another is often made rapidly, on the basis of information obtained from signs glimpsed only for the few moments it takes to approach a service station. Hence, there is a considerable need for such signs to simply, concisely, and accurately provide the potential consumer with the data necessary for an informed decision. Due to the limited opportunity a passing motorist has to obtain whatever information is provided on signs posted in a gasoline station, it is appropriate for the State to take reasonable steps to ensure that the requisite pricing information will not be obscured by an assortment of advertising slogans which serve only to lure the consumer into a service station without giving solid information about the price of gasoline at that station (see Friedman v Rogers, 440 US 1, 15-16, supra). This is the precise purpose of Local Law No. 9. By limiting the number and content of signs posted in a gasoline station, the local law seeks to ensure that a consumer will in fact have a realistic opportunity to obtain needed price information, instead of being faced with a potentially deceptive sign saying "Check Our Low Low Low Prices” and devoid of any pricing information.
We have recently had occasion to declare that "a particular mode of advertising which would not well serve the societal interest in informed decision making * * * may constitutionally be banned” (Matter of Consolidated Edison Co. v Public Serv. Comm., 47 NY2d 94, 109). Similar principles are applicable here. Signs such as that posted by defendant, rather than contributing to the free flow of information, serve only to distract the motorist’s attention from the data actually needed for an informed decision. Certainly "the societal interest in informed decision making” is more aptly furthered when the consumer is provided with the actual price of gasoline, than when the motorist is told that Mobil has "Low Low Low” prices for gasoline.
In sum, the section of the local law pursuant to which *207 defendant stands convicted serves as an appropriate and reasonable means of preventing fraudulent and deceptive advertising. As such, it in no way violates the First Amendment. Absent a clear constitutional violation, which is not here present, I refuse to concur in the decision of the majority of this court, for it will have the effect of invalidating a necessary bit of consumer protection legislation in a field which is especially susceptible to deceptive advertising.
As to defendant’s due process argument, it suffices to note that this court rejected the same contention in People v Arlen Serv. Stas. (284 NY 340). The argument is no more persuasive today than it was then.
Accordingly I vote to reverse the order appealed from and to reinstate the judgment of Tuckahoe Village Court.
Judges Jasen, Jones and Fuchsberg concur with Judge Meyer; Judge Gabrielli, dissents and votes to reverse in a separate opinion in which Chief Judge Cooke and Judge Wachtler concur.
Order affirmed.