UNITED STATES of America, Plaintiff,

v.

An article of food consisting of the following: 60 cases more or less, each containing 12/50 tablet bottles

.    .    .    .    .

all labeled in part: . . . (Bottle)

"AANGAMIK 15 CALCIUM PANGA-MATE, etc.," Defendant.

FoodScience Laboratories, Inc., Claimant–Defendant.

Nos. 77 C 662, 77 C 1526, 77 C 1647, 77 C 3210, 77 C 3314 and 77 C 4219.

United States District Court, N. D. Illinois, E. D.

Oct. 29, 1980.

James T. Hynes, Asst. U. S. Atty., Chicago, Ill., Nancy L. Buc, Chief Counsel, Stephen D. Terman, Asst. Chief Counsel for Enforcement, Rockville, Md., for plaintiff.

Robert Ullman, Bass, Ullman & Lustigman, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROSZKOWSKI, District Judge.

This matter is before the court for a ruling following a bench trial beginning on December 12, 1979 and ending on December 19, 1979.

This is an action for a civil *in rem* seizure and injunction brought pursuant to the provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, (the "Act"). Plaintiff is seeking condemnation, pursuant to 21 U.S.C. § 334, of an article of food generally referred to as Aangamik 15 tablets.

Plaintiff commenced six *in rem* seizure actions, one each in the Districts of New Jersey, Oregon, Hawaii and the Southern District of Florida, and two in the Northern District of Illinois. The six actions were consolidated for trial in the Northern District of Illinois pursuant to the provisions of 21 U.S.C. § 334(b).

FoodScience Laboratories, Inc. ("FoodScience"), manufacturer of Aangamik 15, filed a claim to the Aangamik tablets under seizure in this consolidated case.

Subsequently, plaintiff was allowed to amend the complaints to include a prayer for injunctive relief against claimant. Claimant filed an amended answer asserting as an affirmative defense this court's lack of *in personam* jurisdiction over the person of the claimant.

At trial, FoodScience moved to dismiss the complaint against it as a defendant in an injunction action. The court reserved ruling on that motion until the close of the case.

At this time, the court denies defendant's motion to dismiss the complaint against it as a defendant in an injunction action. The court finds that plaintiff's prayer for condemnation of the article and prayer for injunctive relief grow out of the

same transaction and that the basic issues are identical. As stated in *Fresh Grown Preserve Corporation v. United States*, 143 F.2d 191, 195 (6th Cir. 1944):

> ... a court having jurisdiction of the principal cause, possesses jurisdiction over all its incidents, and may by motion, attachment, or execution enforce its decrees against all who become parties to the proceedings.

*See, also United States v. 184 Barrels Dried Whole Eggs*, 53 F.Supp. 652 (E.D.Wis.1943). Consequently, it is in the interest of judicial economy for the court to consider all of plaintiff's prayers for relief at the same time.

Plaintiff's complaint alleges that Aangamik 15 is a food which is adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C) in that it bears or contains a food additive which is unsafe within the meaning of 21 U.S.C. § 348(a). Plaintiff further alleges that the Aangamik 15 is misbranded within the meaning of 21 U.S.C. § 343(a) and § 343(i)(2).

Finally, plaintiff alleges that claimant/defendant, FoodScience Laboratories, Inc., has been and is now engaged in the delivery or introduction for delivery into interstate commerce of the Aangamik 15 in violation of section 331(a) of the Act, 21 U.S.C. § 331(a). Plaintiff seeks injunctive relief pursuant to the provisions of 21 U.S.C. § 332.

## FINDINGS OF FACT [1]

Defendants are the articles of food seized in the consolidated cases and FoodScience Laboratories, Inc., a corporation organized and existing under the laws of the State of Vermont.

The Aangamik 15 tablets under seizure (the "Aangamik 15 tablets") contain a mixture of N,N–Dimethylglycine hydrochloride (N,N–Dimethylglycine), calcium gluconate, Avicel, Stearic Acid, and Dicalcium Phosphate.

The Aangamik 15 tablets were shipped in interstate commerce from the State of Vermont to the States of Illinois, Florida, Oregon, Hawaii and New Jersey. The tablets were shipped in interstate commerce to Illinois, Florida, Oregon, Hawaii and New Jersey prior to each of the seizures consolidated in this action.

The Aangamik 15 tablets are intended for oral ingestion by humans. The tablets contain the substance N,N–Dimethylglycine. N,N–Dimethylglycine is a naturally occurring constituent of foods.

N,N–Dimethylglycine is not a substance that was in common use in food prior to January 1, 1958.

The Food and Drug Administration ("FDA") has not provided for by regulation any exemption for investigational use of N,N–Dimethylglycine in foods or food supplements. The FDA has not published any regulations allowing the use of N,N–Dimethylglycine in foods or food supplements.

FoodScience has been and is now engaged in the delivery or introduction for delivery into interstate commerce of articles of food within the meaning of 21 U.S.C. § 321, containing N,N–Dimethylglycine.

The Aangamik 15 tablets were labeled containing calcium pangamate and were represented as being or containing Vitamin B–15. There is no scientifically recognized Vitamin B–15, and the tablets do not contain Vitamin B–15.

Neither N,N–Dimethylglycine nor calcium pangamate is a vitamin or pro–vitamin.

There are and have been many commercially marketed products referred to as "calcium pangamate", "pangamic acid", "Vitamin B–15", and "B–15", which contain varying chemical formulations. The labels on the Aangamik 15 tablets under seizure state, "Calcium Pangamate–salt of Pangamic Acid. . . . Each tablet contains: Calcium Pangamate."

---

1. Any finding of fact which may be more properly termed a conclusion of law shall be deemed a conclusion of law.

## CONCLUSIONS OF LAW [2]

This court has jurisdiction of this action under 28 U.S.C. § 1345 and 21 U.S.C. § 334.

The court has *in personam* jurisdiction over the claimant for purposes of injunctive relief pursuant to 21 U.S.C. § 332(a).

The seized articles of Aangamik· 15 tablets are food within the meaning of 21 U.S.C. § 321(f). They are liable to seizure and condemnation if they are found to contain an unsafe food additive within the meaning of 21 U.S.C. § 348(a).

Both parties agree that the critical issue in this case is whether N,N–Dimethylglycine is an unsafe food additive within the meaning of 21 U.S.C. § 321(s) and § 348(a). Section 321(s) provides, in pertinent part:

. The term "food additive" means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food (including any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food; if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe under the conditions of its intended use; . . . .

Defendant argues that N,N–Dimethylglycine is a naturally occurring substance in food and is, itself, recognized as a food. Therefore, the fact that it is extracted from its natural habitat and offered in the form of a tablet does not change its character as a food.

Plaintiff contends that N,N–Dimethylglycine is a substance, the intended use of which resulted in its becoming a component of a food, specifically the Aangamik 15 tablets. According to 21 C.F.R. 170.3(g), " . . . 'substance' in the definition of the term 'food additive' includes a food or food component of one or more ingredients."

Section 321(f), 21 U.S.C. § 321(f), defines a "food" as follows:

The term "food" means (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article.

It appears to be settled that a "food" may also be a "food additive" as defined by the Act. In *United States v. Article of Food Consisting of 10 Drums, More or Less, of Orotic Acid*, 414 F.Supp. 793 (E.D.Mo.1976), *aff'd.* No. 76–1554 (8th Cir. 1977), the court found that orotic acid is both a food and an unsafe food additive within the meaning of the Act. Although the orotic acid in question had been manufactured, orotic acid is found naturally in cow's milk.

Petitioner in *National Nutritional Foods Association v. Kennedy*, 572 F.2d 377 (2nd Cir. 1978), contended that vitamins and minerals are foods within the meaning of the Act and that, within the nature of things, a food cannot be a food additive. In rejecting this contention, the court quoted from *United States v. 41 Cases, More or Less*, 420 F.2d 1126, 1131 (5th Cir. 1970), as follows:

The sole criterion for identifying a food additive is whether a substance which may become a component of or affect the characteristics of any food be not generally recognized among qualified experts as having been shown to be safe. . . .

The court went on to state that a substance does not gain immunity from this criterion merely because it also qualifies as a food.

■ This court finds that N,N–Dimethylglycine is a food additive within the meaning of 21 U.S.C. § 321(s). After reviewing the considerable amount of expert testimony presented by both parties, it is the

---

2. Any conclusion of law which may be more properly termed a finding of fact shall be deemed a finding of fact.

court's opinion that N,N–Dimethylglycine is not generally recognized among qualified experts as having been shown to be safe under the conditions of its intended use.

The parties have stipulated to the fact that the FDA has not provided for by regulation any exemption for investigational use of N,N–Dimethylglycine in food or food supplements nor has the FDA published any regulations allowing the use of N,N–Dimethylglycine in foods or food supplements. Consequently, N,N–Dimethylglycine, as a food additive, is deemed to be unsafe within the meaning of 21 U.S.C. § 348(a).[3]

The Aangamik 15 tablets contain N,N–Dimethylglycine. Therefore, they are deemed to be an adulterated food within the meaning of 21 U.S.C. § 342(a)(2)(C).[4]

Plaintiff's second claim is that the Aangamik 15 tablets are misbranded within the meaning of 21 U.S.C. § 343(a) and § 343(i)(2). Section 343(a) provides: "A food shall be deemed to be misbranded if its labeling is false or misleading in any particular."

■ It is well–settled that a label will be deemed to be misleading under the Act if it misrepresents the article in question in any way. *See e. g. United States v. Ninety–Five Barrels (More or Less) Alleged Apple Cider Vinegar*, 265 U.S. 438, 44 S.Ct. 529, 68 L.Ed. 1094 (1924); *United States v. An Article of Food ... Nuclomin*, 482 F.2d 581 (8th Cir. 1973).

■ Defendant argues that because this case is a consolidation of six different seizure actions, the court must consider separately each different product label involved.

The court disagrees. The parties have stipulated to the labels, advertisements and sales letter that defendant used to identify and promote the Aangamik 15 tablets. Although they differ in certain respects, they all suggest that defendant's product is a vitamin and is beneficial to the human body in some way.

The evidence shows that Aangamik 15 has also been referred to as "calcium pangamate", "Vitamin B–15" and "B–15". One of defendant's promotional letters states that "... Aangamik is the new *VITAMIN B–15* Food Supplement based on the famous formula from Russia." Another document proclaims, "Aangamik now brings to the discerning food enthusiast the benefits of a salt of *PANGAMIC ACID*, Vitamin B–15."

It is uncontested that the Aangamik 15 tablets under seizure are not a vitamin or a pro–vitamin. The evidence shows that there is no scientifically recognized Vitamin B–15 and that the Aangamik 15 tablets do not contain Vitamin B–15.

■ The court finds that the average consumer could perceive the Aangamik 15 tablets as a vitamin product. Consequently, they are misbranded within the meaning of 21 U.S.C. § 343(a).

Section 343(i)(2) provides: "A food shall be deemed to be misbranded–(i) ... unless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient; ...."

Plaintiff claims that the Aangamik 15 is misbranded because its label uses the terms

---

**3.** 21 U.S.C. § 348(a) provides:

A food additive shall, with respect to any particular use or intended use of such additives, be deemed to be unsafe for the purposes of the application of clause (2)(C) of section 342(a) of this title, unless–
(1) it and its use or intended use conform to the terms of an exemption which is in effect pursuant to subsection (i) of this section; or (2) there is in effect, and it and its use or intended use are in conformity with, a regulation issued under this section prescribing the conditions under which such additive may be safely used.

While such a regulation relating to a food additive is in effect, a food shall not, by reason of bearing or containing such an additive in accordance with the regulation, be considered adulterated within the meaning of clause (1) of section 342(a) of this title.

**4..** 21 U.S.C. § 342(a)(2)(C) provides:

A food shall be deemed to be adulterated if it is, or it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title: ....

"binder and lubricant" rather than the common or usual name of each of those ingredients.

Defendant asserts that it is not common practice in the marketplace to specify binders and lubricants by name on tablet labels and that, in fact, such names would probably not be recognized by the public. In support of its argument, defendant placed in evidence the labels of several food supplement products which failed to identify their binders and lubricants.

While it may be argued that a label, accurate in all other respects, need not specify its binders and lubricants by name, that is not the case here. Defendant admits that certain of its labels fail to mention even the principal ingredients of Aangamik 15, that is, dimethylglycine and calcium gluconate. Consequently, the court finds that the Aangamik 15 tablets are misbranded within the meaning of 21 U.S.C. § 343(i)(2).

In summary, it is concluded that N,N–Dimethylglycine is an unsafe food additive within the meaning of 21 U.S.C. § 348(a) and that the Aangamik 15 tablets under seizure are adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C). It is further concluded that the Aangamik 15 tablets under seizure are misbranded within the meaning of 21 U.S.C. § 343(a) and § 343(i)(2).

Accordingly, it is ordered that judgment be and the same is hereby entered in favor of plaintiff and that such article be condemned pursuant to 21 U.S.C. § 334. All costs of this action shall be assessed against claimant/defendant, FoodScience Laboratories, Inc.

Plaintiff is ordered to submit a draft order providing for the requested injunctive relief and the disposition of the condemned article within ten (10) days of the receipt of this order.