UNITED STATES of America, Libelant,

v.

119 CASES, MORE OR LESS, each containing 12 Bags of an Article Labeled in Part: * * * (Tampa Seizure):

and

449 Cases, more or less, each containing 12 Bags of an Article Labeled in Part: * * * (Jacksonville Seizure):

"NEW DEXTRA BRAND FORTIFIED CANE SUGAR * * *"

No. 101-62-M-Civ-EC.

United States District Court
S. D. Florida.

Feb. 21, 1963.

Herbert J. Miller, Jr., Asst. Atty. Gen., Washington, D. C., Thomas J. O'Leary, Atty. Dept. of Justice, Washington, D.

C., and William A. Meadows Jr., U. S. Atty., Miami, Fla., for libelant.

Arnold, Fortas & Porter, Thurman Arnold and Stuart Land, Washington, D. C., Fowler, White, Gillen, Humkey & Trenam, Cody Fowler and Walter Humkey, Miami, Fla., for claimant.

CHOATE, District Judge.

1. This is a civil action *in rem* arising under Section 304 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 334.

2. The United States, Libelant herein, instituted this consolidated action by the filing of a Libel of Information at Jacksonville, Florida alleging that 449 cases, more or less, of an article of food labeled in part "New Dextra Brand Fortified Cane Sugar," had been shipped in interstate commerce from Ottawa, Ohio to Jacksonville, Florida, on or about July 21, 1961, and was misbranded when introduced into and while in interstate commerce within the meaning of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 331 et seq., in a number of ways.

A similar libel was filed in Tampa, Florida alleging that a shipment of "New Dextra Brand Fortified Cane Sugar" had been shipped in interstate commerce from Ottawa, Ohio to Tampa, Florida in interstate commerce, on or about July 21, 1961.

3. Pursuant to Monitions in both of these actions, the United States Marshal at Jacksonville, Florida, seized 585 cases of the libeled sugar on December 20, 1961, and the United States Marshal, at Tampa, Florida, seized 106 cases of the libeled sugar, on December 18, 1961.

4. Upon the stipulation of both parties, the Jacksonville and the Tampa cases were consolidated and removed to this Court for disposition, and the issues of fact and law in each case are identical.

5. A claim for the seized article was duly filed by the Sugarlogics Southern Corporation. This company is a subsidiary of the Dextra Corporation. As hereafter noted, at the time the seized article was manufactured and shipped, claimant's principal offices were in Delray Beach, Florida. They are now located in Miami, Florida.

6. It was established by stipulation that the bags of the *res*, manufactured at Ottawa, Ohio and shipped in interstate commerce as described above, consist of approximately 96% sugar produced from beets and 5% sugar produced from cane.

7. Pursuant to stipulation of the parties, the shipment of the *res* in interstate commerce is admitted. Claimant and its parent, the Dextra Corporation, have been and are now selling Dextra Brand Fortified Sugar in interstate commerce. However, it has limited its distribution efforts to test marketing because the Food and Drug Administration has opposed the sale of the product. The serious risk of seizure proceedings resulting from this opposition has precluded the company from making substantial investments necessary for major marketing of the product until the company's rights to sell the product have been clarified.

8. The first assertion of the libelant is to the effect that the *res* is mislabeled because the name "DEXTRA" implies that the product is comprised of dextrose rather than sucrose. The Court notes that the root of all words found in an unabridged dictionary bearing the "dext" prefix is from the Latin meaning pertaining to the right or right hand, or dextrous, or fortunate. The Government has not sustained the charge that the registered trademark "Dextra" as used on the labels of the article in issue represents and suggests to consumers that the article is composed of dextrose. No evidence of consumer reaction was introduced; the only evidence presented by the Government was the conjectural opinions of several of its expert nutritional witnesses. On the other hand, the record affirmatively establishes that dextrose is physically different in appearance from granulated sugar and is sold through drug channels; that Dextra Brand Fortified Sugar was not labeled,

sold or promoted in any manner to imply or suggest to consumers that the product contains dextrose, which is an inferior sweetening agent; and that, in fact, consumers have not regarded the product as being comprised of dextrose.

9. Secondly, the Government alleges that the label of the seized article of food contains statements which represent, suggest, and imply:

(a) That the American diet is deficient in vitamins and minerals and that Dextra Sugar will correct this implied deficiency;

(b) That the nutritional content of diets generally is significantly improved by the use of the seized article;

(c) That Dextra Sugar when used in the ordinary diet is significantly more nutritious than any other sugar;

(d) That the article under seizure is of significant value because it restores vitamins and minerals lost in the refinement of cane juice;

(e) That all of the vitamins and minerals in the article are present in nutritionally significant amounts for special dietary use.

The label complained of has the following statements:

(on the front panel of the label)
"New!"

"Dextra Brand Fortified Sugar"

"Fortified with Vitamins and minerals"

(on the backside panel of the label)
"Now, at long last, many of the vitamins and Minerals lost in the refinement of cane juice have been restored to DEXTRA Fortified Cane Sugar."

"Almost any diet can be nutritionally improved by the use of DEXTRA Fortified Cane Sugar in place of sweetening agents containing only "empty" calories—calories unaccompanied by nutrients."

*"MORE NUTRITIOUS THAN ANY OTHER SUGAR!"*

The representations above referred to are also made by listing 19 ingredients of

the seized sugar and *comparing* the amounts of each of these ingredients in the seized sugar with the amounts present in ordinary sugar.

10. Considering each of these allegations of mislabeling in turn as set forth below, the Court finds as follows:

(a) *That the American diet is deficient in vitamins and minerals and that Dextra Sugar will correct this implied deficiency.*

There is no persuasive evidence of any kind that consumers would construe the label statements referring to the fact that the Dextra Brand product is "fortified with vitamins and minerals" to represent, suggest or imply that the "American diet," or their own diets, are significantly deficient in vitamins and minerals, and that use of this product would overcome such a deficiency. The record establishes that consumers are familiar with many food products labeled as vitamin fortified or enriched, including flavorings made largely from sugar, and foods enriched pursuant to standards promulgated by the Federal Food and Drug Administration. In addition, vitamin and mineral supplements, labeled as such, are sold on an unrestricted basis in many types of retail outlets. The Government disclaimed the notion that the mere disclosures on the labels of these products of their fortification with vitamins and minerals are likely to be construed by consumers to involve representations with respect to deficiencies of vitamins and minerals in the food supply. No adequate basis was presented for holding that consumers would react differently to the label of Dextra Brand Fortified Sugar. The evidence is clear that consumers would interpret such disclosures on the label of this product to mean only what it states: that this product is fortified with vitamins and minerals.

(b) *That the nutritional content of diets generally is significantly improved by the use of the seized article.*

The Government contends that the added nutrients in Dextra Brand Fortified Sugar are not nutritionally significant be-

cause adequate amounts of these nutrients are available in the average "American" diet, and that the added nutrients in the product would be excreted and of no value. In the first place, to hold that a product was misbranded on this basis would introduce substantial confusion and inconsistency into the application of the provisions of the Federal Food, Drug, and Cosmetic Act. As heretofore noted, a wide variety of vitamin and mineral supplements and vitamin- and mineral-fortified food products are sold in this country, and admittedly the diet of a small but significant portion of our population is deficient in vitamins. The Government and its witnesses do not assert that the offering of these products is per se deceptive to consumers because the vitamins and minerals added therein are of no nutritive value. If the Government's contention were valid, any vitamin-fortified product could be singled out and challenged on the ground that the added vitamins and minerals in any particular food are of no value inasmuch as these nutrients are available elsewhere in the food supply, and the consumers' requirements are met. For example, this would also be true of the vitamins and minerals added to two recently standardized food products, enriched vegetable macaroni and enriched vegetable noodles. The Government's theory thus provides an unacceptable basis for condemning the fortification of food products as misbranded. (The fact that most Americans enjoy a diet sufficient in vitamins and calories is not important in this case.)

(c) *That Dextra Sugar when used in the ordinary diet is significantly more nutritious than any other sugar.*

The disclosures of the fact that the product is fortified do not misrepresent the product's nutritional value in comparison with ordinary sugar. The Government has not seriously disputed the fact that the product contains appreciable amounts of vitamin B1 (thiamine), vitamin B2 (riboflavin), vitamin B6 (pyridoxine), niacin, vitamin A, vitamin C, iron and iodine. Nor is there any question that these vitamins and minerals are highly important in human nutrition. Except for vitamin B6, the Federal Food and Drug Administration itself has established "minimum daily requirements" for these nutrients. In addition to the general nutritional value of these nutrients, the thiamine included in the product makes a special contribution in that it plays an important role in the metabolic transformation of sugar into energy in the human body. The Government's witnesses have further acknowledged that Dextra Brand Fortified Sugar is an effective carrier of these vitamins and minerals contained in the product and that their potency is in no way diminished by their association with this sugar. On the other hand, ordinary sugar is commonly referred to in the nutritional literature as "empty calories" because of its complete lack of nutrients. The product, when considered in comparison with ordinary sugar, is clearly more nutritious in view of the addition of these important nutrients and is honestly labeled to reflect this fact.

(d) *That the article under seizure is of significant value because it restores vitamins and minerals lost in the refinement of cane juice.*

The article in issue is wholesome food; no charge is made that the product is adulterated or deleterious in any respect. It is composed of refined white granulated sugar which has been fortified with vitamins and minerals in the proportions set out in the tables found on the labels in issue in this proceeding. The principal vitamins and minerals added to the product are: vitamin B1 (thiamine), vitamin B2 (riboflavin), vitamin B6 (pyridoxine), niacin, vitamin A, vitamin C, iron and iodine. Sugar in its natural state is found in sugar cane and sugar beet plants. These plants contain substantial quantities of the vitamins and minerals listed. However, in the refining of sugar, these nutrients are completely lost. The end product, white granulated sugar, is devoid of any vitamins and minerals; it consists entirely of pure carbohydrates.

The process for fortifying sugar with vitamins and minerals was created by a biochemist, John Paul Bartz. Over a fifteen-year period, he developed a method of refining sugar to retain the vitamins and minerals found in natural sugar plants. He also developed a process of adding these vitamins and minerals to ordinary sugar essentially to duplicate the product obtained by use of his refining process. Claimant uses this latter method for making fortified sugar at this time, inasmuch as the Bartz refining process requires large-scale production to be economically feasible. The implication italicized above rather than false or misleading seems to be true in all respects.

The Government challenges the accuracy of the statement included in relatively small print on the rear panel of the label specifically the phrase: "Now, at long last, many of the vitamins and minerals lost in the refining process have been restored to DEXTRA Fortified Sugar." One of the Government's witnesses testified that this statement is false and misleading to consumers because the vitamins and minerals added to the product are synthetic and not "precisely" the nutrients contained in cane juice; further because this statement represents that cane juice is a food of "significant nutritive value." The testimony is not persuasive, and, in all events, as stated before, the record establishes the accuracy of this statement.

(e) Finally, the Government contends that the labels falsely imply, "That all of the vitamins and minerals in the article are present in nutritionally significant amounts for special dietary use." However, the label makes no specific therapeutic or health claims. The label states "Almost any diet can be nutritionally improved" by using the product "in place of sweetening agents containing only 'empty' calories—calories unaccompanied by nutrients." The Government has failed to show that this statement is factually in error. Moreover, the record affirmatively establishes that the product is nutritionally superior to ordinary sugar which, by the testimony of the Government's own witnesses, is regarded as "empty calories," and that many diets could be improved through the use of this product. On this record, such an innocuous statement, accurate in its terms especially when applied to a significant part of our population, cannot be regarded as false or misleading to consumers.

11. The Government also seeks to establish misleading labeling on the basis that the caloric content of the product is stated "per gram". The Court rejects this out of hand. Those consumers who are not aware of the physical amount represented by a gram have ready access to myriad reproductions of tables of metric equivalents. The Government offered no consumer witnesses to prove their contention, and does not question the accuracy of the statement as expressed in metric form.

12. On the other hand the Government contends that the food in question being fabricated from two or more ingredients must be labeled with the common or usual name of each of the ingredients. For example, the label in fact indicates that the product contains "Vitamin A". According to the Government it should be labeled "Vitamin A derived from Vitamin A acetate." In the case of the item stated on the label as "Phosphorus" the Government would insist upon "Phosphorus from Monosodium phosphate and/or monopotassium phosphate." Similar full derivative names are suggested by the Government for each of the minerals listed on the label. Certainly, the consumer who can be misled by the term gram will not be greatly enlightened by the information that his Vitamin A is derived from a Vitamin A acetate. Such information might be of great comfort to the chemist, but the Government's insistence that "Phosphorus from monosodium phosphate and/or monopotassium phosphate" is the common or usual name of Phosphorus borders on the picayune and is not supported by the evidence.

13. It is also alleged that the label is misleading in that it states that it

contains "Total sugars (carbohydrates) not less than 94% and non-sugar solids not more than 6%. The Government admits that this is literally true. However, since the *res* contains in fact in excess of 98% sugars, the Government contends that it is implied that some 6% of the product is vitamins and minerals. The Government, however, offered no consumer testimony to support such an innuendo, and the Court finds that the burden of proof as to this allegation has not been sustained.

14. One further allegation by the libelant made at the time of trial remains to be disposed of. The Government complains that the label states in small print that the product was "manufactured and distributed in Florida by the Sugarlogics Southern Corporation." The Government claims that this statement is false and misleading. Thus, it cites the fact that most of the cases of sugar seized were produced in Ottawa, Ohio, and further, that none of the products could be regarded as manufactured in Florida because the sugar was not refined in the state of Florida. These arguments involve trivial points unworthy of extended analysis. There is no dispute that claimant in fact processed the product, that the sugar was distributed in Florida and that claimant is a Florida-based organization. On these facts, there is plainly no basis for warranting that the statement misbrands the product.

15. Although the foregoing disposes of the specific allegations of mislabeling, the Government's principal contention is that the offering of a sugar fortified with vitamins and minerals and labeled to disclose such facts is "per se" false and misleading to consumers. Specifically, the Government charges that the mere mention on the labels of such product that it is fortified with vitamins and minerals infers contrary to fact that (1) the diet available to the American consumer is vitamin deficient; (2) such product might promote the increase of sugar as a part of the American diet contrary to sound nutritional practice;

and (3) sugar is not an effective or preferable vehicle of vitamin supplementation. This is the actual thrust of the Government's case to which they have devoted themselves assiduously.

In this connection the Court notes Claimant's Exhibit 1, which is the label under which Dextra Brand Fortified Sugar is presently sold. This was prepared by claimant in a final effort to obtain the approval of the Federal Food and Drug Administration of the sale of the product and to meet as far as possible every objection which that Agency made with respect to its labeling. However, the Government maintains that this label also misbrands the product, inasmuch as the offering for sale of a vitamin-fortified sugar is *"per se"* misleading to consumers, and that the mere mention of the fact that the product contains vitamins and minerals is deceptive.

However, the Government failed to present any valid factual support for its principal objection. It introduced no authoritative studies or other data to show that American consumers are receiving all the nutrients they need and that the added vitamins and minerals would be of no value to them. Instead, it relied on the vague opinions of several expert witnesses regarding the adequacy of the nutrients in the average "American diet." This cannot be regarded as persuasive proof. Whatever the usefulness of the concept, "average American diet," in nutritional planning, it is not appropriate for determining allegations of product misbranding. In the first place, the use of an average implies that some persons may be getting more nutrients and others less. Further, such broad measures of nutritional adequacy bear little relationship to the needs of any single individual or groups of individuals.

Moreover, the opinion testimony of the Government's witnesses on this point was not persuasive. The Government's witnesses testified, and claimant did not dispute, that the food supply available to consumers contains adequate amounts of all the vitamins and minerals contained in Dextra Brand Fortified Sugar. But

the Government did not establish that consumers were taking full advantage of this availability. Its witnesses testified merely that vitamin and mineral consumption in the United States had risen to the point where *diseases* caused by vitamin deficiencies, such as scurvy and rickets, had virtually disappeared. However, Dextra Brand Fortified Sugar is not sold as a drug to cure or prevent these deficiency diseases, and the evidence established that the consumption levels of vitamins and minerals recommended for good nutrition are considerably higher than the levels required to prevent disease.

Moreover, it was established at the trial that there are a large number of studies, including those published by the United States Government, which disclose that appreciable segments of the population in all parts of the country, and in various economic and age groups, consume substantially less than the allowances of vitamins and minerals recommended by the Food and Nutrition Board of the National Research Council, which allowances are regarded as the standard by most nutritionists.

While the Government's witnesses acknowledged the existence of studies disclosing the existence of groups receiving less than the recommended dietary allowances, they testified that the allowances recommended by the Food and Nutrition Board were not "requirements" and that it was not necessary to satisfy them. However, they all agreed that the recommended allowances have been established as guides for maintaining good nutritional levels in the United States. Further, as Dr. R. W. Engel, the Government's own witness, testified with respect to these allowances (Engel dep. 11):

"* * * it is the philosophy of the board in promulgating the allowances that this is a goal that would be hopefully achieved by *all* healthy individuals in our population." (Emphasis supplied)

The Court cannot condemn a fortified sugar product which can contribute to the reaching of this goal, particularly in view of the wide consumption of sugar which contains none of these nutrients.

18. The testimony of the Government's witnesses disclosed that the real basis of the Government's objection to the sale of fortified sugar is the notion that sugar is not a preferable vehicle for distributing vitamins and minerals. Two Government witnesses expressed the belief that the fortification of sugar might lead to its increased use in place of other foods, which would be contrary to "sound nutritional teachings." Even if this were true, and no proof to the effect that such was the case was offered, it would not justify condemnation of the product. The implementation of sound nutritional principles, and the encouragement or discouragement of the consumption of particular foods in accordance with these principles, are matters for consumer education, not for legal enforcement pursuant to the seizure provisions of the Federal Food, Drug, and Cosmetic Act. In any event, the opinions of the Government's witnesses on this point were conjectural and inconclusive. They failed to demonstrate how fortified sugar would be used by consumers to replace any foods other than regular sugar already being consumed. Moreover, the record shows that sugar has a self-limiting role in the diet since it is used principally as a sweetening agent; this is evidenced by the fact that the per capita consumption of sugar in this country has remained at a constant level of about 100 pounds a year for many decades. It is also noted the fortification of flour has not led to its increased consumption; on the contrary, its use is on a slight decline. Further, one of the Government's own witnesses testified that consumers were increasingly aware of the principles of sound nutrition and the selection of proper foods in the diet. The record thus establishes no basis for a finding that the fortification of sugar would lead to the increased consumption of sugar or the replacement of other foods by sugar. Moreover, the record establishes ample

nutritional justification for fortifying sugar, which has the least nutritional value, other than calories, of any staple food commonly consumed.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the *res* under seizure. 21 U.S.C. § 334(f)(2).

2. The articles seized at both Jacksonville and Tampa, Florida are articles of food within the meaning of 21 U.S.C. § 321(f).

■ 3. The offering of Dextra Brand Fortified Sugar does not involve a "per se" deception of consumers, and the sale of the product is not inherently deceptive.

■ 4. The statements on the labels of Dextra Brand Fortified Sugar herein considered which refer to the fact that the product is fortified with vitamins and minerals are not false or misleading and do not constitute misbranding within the meaning of Section 403 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 343(a)) or any other provision of that Act.

5. The labels which have been considered in this proceeding are not false or misleading and the product is not misbranded within the meaning of Section 403(a) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 343(a)) or any other provision of that Act.

6. The Government as libelant has not raised the issue of mislabeling due to the fact that much of the sugar was derived from beets rather than cane. On the libelant's theory of the case, the fact that the product in either event was sucrose and possesses the exactly same physical properties in any event would seem to preclude any argument of misleading the consumer if in fact the contention had been made.

7. The libelant has failed to support the allegations of the libels of information by satisfactory proof. Claimant is accordingly entitled to a dismissal of the libels of information filed herein with prejudice, and to the return of the seized articles.

## OPINION OF THE COURT

■ This proceeding involves the question whether claimant's product, consisting of sugar fortified with vitamins and minerals, is misbranded and in violation of Section 403 of the Federal Food, Drug, and Cosmetic Act. While a number of charges are asserted in the libels of information filed herein, the Government's principal challenge is on a novel basis—that the offering of a fortified sugar, truthfully labeled to disclose such fortification, is misleading "per se" to consumers. At the outset it is important to note that despite the sweeping nature of the consumer deception which this product is charged to create, the Government at the trial presented no actual evidence that consumers were misled by the product. The Government has chosen to rest its case on opinion evidence of several nutritionists despite the fact that in a seizure proceeding, the "burden is upon the Government to prove the ground for forfeiture alleged in the libel * * * by a fair preponderance of the evidence." See, e. g., United States v. 46 Cases, More or Less, Etc., 204 F.Supp. 321, 322 (D. R.I.1962). It is clear that the Government failed to meet its burden in this case.

■ The Government's witnesses' testimony was largely directed to their views regarding the most preferable means of supplying vitamins and minerals to consumers, and whether the fortification of sugar complied with a Statement of General Policy on fortification issued by the Food and Nutrition Board of the National Research Council. Such testimony plainly is not pertinent here. Section 403 of the Federal Food, Drug, and Cosmetic Act permits the seizure and condemnation of goods only if they are *misbranded,* and that plainly means only if the labeling of the product is *false or misleading.*

Section 301 of the Act merely empowers the Food and Drug Administration to issue "a reasonable definition and standard of identity" so that consumers who purchase it can obtain "assurance

that they will get what they reasonably expect to receive". See Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 232, 63 S.Ct. 589, 597, 87 L.Ed. 724 (1943). Such standards have no bearing on the sale of a single, unique food product such as Dextra Brand Fortified Sugar.

The Government charges that "mere mention" on the labels of Dextra Brand Fortified Sugar of the fact that the product is fortified and the listing of the vitamins and minerals contained therein could be construed by consumers to suggest or imply that vague generality known as the "American diet" is deficient in the supply of vitamins and minerals, and that use of this product would overcome this deficiency.

The Government also challenges the product as inherently deceptive on the ground that the disclosures regarding fortification misrepresent the product's nutritional significance in comparison with ordinary sugar. However, the Government's witnesses did not dispute that this product is an effective carrier of the vitamins and minerals added to respondent product, and that ordinary sugar contains none of these nutrients, and is commonly referred to in nutritional literature by the derogatory term, "empty calories". Indeed, the Government's own witnesses appeared to concede that in comparison with ordinary sugar, the product in fact was *significantly* more nutritious.

■ The sole basis of the Government's charges is that the added nutrients are of no value because they are already in adequate supply in the American diet. This is clearly an untenable basis for holding the product misbranded.

It is clear that the true basis for the objection to the fortification of sugar is not that the vitamins and minerals added to the sugar are of no nutritional value, but rather, that the Food and Drug Administration does not regard sugar as a preferable vehicle for fortification, or for addition of vitamins where a deficiency exists. In short they quarrel over the vehicle.

The basic flaw in the Government's case against the product is that it is seeking, under the guise of misbranding charges, to prohibit the sale of a food in the marketplace simply because it is not in sympathy with its use. But the Government's position is clearly untenable. The provisions of the Federal Food, Drug, and Cosmetic Act did not vest in the Food and Drug Administration or any other federal agency the power to determine what foods should be included in the American diet; this is the function of the marketplace. Under Section 403 of the Act, Congress expressly limited the Government's powers of seizure to those products which are falsely or deceptively labeled. As the Supreme Court aptly stated in rejecting a similar attempt to overreach the authority granted by the Federal Food, Drug, and Cosmetic Act:

"In our anxiety to effectuate the congressional purpose of protecting the public, we must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop." 62 Cases of Jam, etc. v. United States, 340 U.S. 593, 600, 71 S.Ct. 515, 520, 95 L.Ed. 566 (1951).

The Court does not undertake to constitute itself an arbiter of nutritional problems involved in determining more or less desirable agents for vending vitamin and mineral supplements to the consumer. The Congress did not provide the necessity of such determination. Neither will the Court permit a federal agency to appoint itself such an arbiter under the guise of prosecuting an action under the Act in question. Plainly only Congress can or should regulate the use of vitamins and then only to prevent public injury.