UNITED STATES of America,
Appellee,

v.

AN ARTICLE OF FOOD consisting of approximately 1,186,380 tablets in Bulk Drums, and 10,432 Repacked Bottles, more or less, LABELED in Part:

(Drum)
NUCLOMIN Lot 7056
(Bottle)

Nuclomin Amino Acid Complexed Trace Minerals with Multi-Vitamins, etc.,

Hunt Investment, Inc., d/b/a Miller Laboratories, Inc., Appellant.

No. 72-1626.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1973.

Decided July 9, 1973.

Rehearing Denied Aug. 7, 1973.

Elliott P. Koenig, St. Louis, Mo., and Kirkpatrick W. Dilling, Chicago, Ill., for appellant.

Gregory B. Hovendon, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before MATTHES, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from an *in rem* proceeding brought under the Federal Food, Drug, and Cosmetic Act against a special dietary product "Nuclomin" claiming it is misbranded in violation of Section 403(a) of the Act, 21 U.S.C. § 343(a).[1] Hunt Investment, Inc., owner of Nuclomin, intervened. Jurisdiction rests under 21 U.S.C. § 334. The district court upheld the government seizure and condemnation on the basis that several ingredients listed on the label were "either of no nutritional value per se or the quantities are so minute as not to enhance the nutritional value of the tablets." The district court, the Honorable John K. Regan presiding, found that such label was false and misleading in that it could persuade a purchaser that the product possessed greater nutritional value than it actually did.

The basic issues on appeal include (1) whether the Food and Drug Administration (FDA) possessed the authority to prohibit the sale of a product that lists, as required by the regulations, completely safe ingredients that may be unnecessary or insignificant; (2) whether sufficient proof was presented to establish that the questioned ingredients were not needed or were included in inadequate amounts; and (3) whether the product label was in fact misleading. We affirm the trial court's ruling.

## THE FDA'S AUTHORITY

■■ The government does not challenge the factual accuracy of the Nuclomin label; rather it claims that the label is misleading to the public because some of the ingredients are either not needed in human nutrition or are included in such insignificant amounts as to be valueless. Specifically, the government attacks the vitamin constituents

1. Section 403(a), 21 U.S.C. § 343(a), provides:
"A food shall be deemed to be misbranded—

"(a) If its labeling is false or misleading in any particular."

choline, inositol and p-aminobenzoic acid, the mineral elements potassium, magnesium and calcium succinate, and the amino acids found in the yeast extract.[2] It is undisputed that these ingredients are consumed daily by the public and are completely safe.

Most of claimant's arguments relate to Section 403(j), 21 U.S.C. § 343(j), relating to the misbranding of special dietary articles. This, however, overlooks the direct authority of the government to bring a condemnation suit for violation of Section 403(a) pertaining to misbranding because of the use of a misleading label. See, e.g., United States v. "Vitasafe Formula M", 226 F. Supp. 266 (D.N.J.1964). Section 403(a), 21 U.S.C. § 343(a), clearly states that a food is misbranded if its labeling is false or misleading in any particular. Therefore, Section 403(j) is not applicable, and the broad proscription of Section 403(a) is.

The claimant asserts that it is in compliance with the applicable regulations, 21 C.F.R. §§ 125.3(a)(2) and 125.4(a)(2), in that the product label contains a statement of the quantity of such vitamin or mineral in a specified quantity of the product and also bears a statement concerning whether the need or requirement in human nutrition has

---

2. The Nuclomin label reads:

"Amino Acid Complexed Trace Mineral
With Multi-Vitamins

"A concentrated source of vitamins, minerals and other nutritional factors, plus the micronutrients asssociated with the amino acids and polypeptides as found in a special yeast extract.

"Dosage

"Adults, orally as a dietary supplement, two tablets per day.
Each two tablets contain                                                    MDR

"Vitamins

| | | | MDR |
|---|---|---|---|
| "Vitamin A | 5000 | Units | 125% |
| Vitamin D | 1000 | Units | 250% |
| Vitamin E | 5 | Units | * |
| Vitamin B1 | 2.5 | mg. | 250% |
| Vitamin B2 (Riboflavin) | 5.0 | mg. | 400% |
| Vitamin B6 | 1.5 | mg. | * |
| Niacinamide | 25.0 | mg. | 250% |
| Panthothenic Acid (as Cal. Pan..........) | 25.0 | mg. | * |
| Choline (as Bitartrate) | 50.0 | mg. | * |
| Inositol | 50.0 | mg. | ** |
| Vitamin C | 50.0 | mg. | 166% |
| Vitamin B-12 | 1.0 | mcg. | * |
| p-Aminobenzoic Acid | 10.0 | mg. | ** |

"Minerals

| | | | |
|---|---|---|---|
| "Copper | 1.0 | mg. | * |
| Iodine | 0.075 | mg. | 75% |
| Manganese | 2.0 | mg. | * |
| Iron | 10.0 | mg. | 100% |
| Potassium | 20.0 | mg. | * |
| Zinc | 2.0 | mg. | * |
| Magnesium | 20.0 | mg. | * |

"In associate with:
"Calcium Succinate ................................... 50 mg.
"MDR: Minimum Daily Requirement.

"* Need in human nutrition, established
Requirement not determined.
"** Need in human nutrition not established."

been established. However, Sections 125.3 (a)(4) and 125.4(a)(4) point out that:

"Compliance with the provisions of subparagraphs (2) and (3) of this paragraph shall not be construed as relieving any food which purports to be or is represented for special dietary use by reason of its [vitamin or mineral] property from the application of section 403(a) and 201(n) of the act, as in the case where the need for such [vitamin or mineral] in human nutrition is not substantially supported by the opinion of experts qualified by scientific training and experience to determine such needs."

Thus even though the Nuclomin label is technically accurate and further meets the regulations' disclosure requirements, it must also comply with Section 403(a) and not be misleading. Realizing that "the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health," United States v. An Article of Drug . . . Bacto-Unidisk, 394 U.S. 784, 798, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969), we hold that the FDA had the authority under Section 403(a) to seize and condemn the special dietary supplement Nuclomin.

## SUFFICIENCY OF PROOF

The testimony of the government's witnesses, Dr. Thomas D. Luckey (a professor of biochemistry at the Missouri School of Medicine and chairman of the graduate nutrition program), and Dr. Harold L. Rosenthal (a professor of physiological chemistry at Washington University Dental School who has done considerable research in the field of nutrition, primarily the metabolism of Vitamin B–12 and amino acids) and the appellant's witness, Dr. Edward Doisy, Jr., (a nutritionist, biochemist, and non-practicing physician) was admittedly conflicting. Nevertheless, there was substantial evidence for the trier of fact to believe that the disputed ingredients in Nuclomin were either not needed in the human diet or that the amount of the ingredient was so small that it would have no value. For example, Dr. Luckey testified that choline is not a vitamin and is not needed in the human diet because it is produced in human tissues from food. He further stated that the amount of choline in Nuclomin (50 mg.) was of no value whatsoever. The government's expert further opined that inositol is also not a vitamin, and all three experts generally agreed that any requirement for inositol is not known. Dr. Luckey testified that p-aminobenzoic acid (PABA) is not required in nutrition, is not a vitamin, and is not needed by man. He further clarified that PABA is one of three constituent parts of the vitamin folic acid; however, the body is unable to take PABA and use it to make folic acid. All witnesses confirmed that potassium is a necessary nutrient, present in all cells, and contained in most all foods. The doctors disagreed on the daily requirement of potassium (from 500 mg. to 4000 mg.), however, they all felt that the 20 to 32 mg. of potassium in Nuclomin would be of little or no value except in the most dire circumstances. Dr. Luckey and Dr. Rosenthal were in agreement that the 15–20 mg. of calcium that Nuclomin would provide per day was meaningless with respect to the recommended daily allowance of 750–800 mg. Finally, the amino acids, polypeptides and other nutritional factors in the yeast extract were concluded to be insignificant for any dietary value by Dr. Luckey, Dr. Rosenthal and Dr. Wixom (a professor of biochemistry at the School of Medicine, University of Missouri in Columbia, who is a specialist in amino acid and protein metabolism and nutrition).

In general, Dr. Luckey testified that he had never heard of anyone being deficient in choline or inositol, and if a person were in need of potassium or magnesium, a therapeutic treatment would consist of greatly higher doses than are present in Nuclomin. Dr. Rosenthal believed Nuclomin to be beneficial for its content of vitamins A, C, D, B–12, riboflavin and niacinamide, but

the elements challenged by the government provided no special dietary value. On cross-examination, Dr. Rosenthal stated that even he had been confused by the Nuclomin label. On the basis of the overall record this court cannot hold the district court's finding that the questioned ingredients were not needed or were included in inadequate amounts clearly erroneous.

## WHETHER MISLEADING

■ The claimant urges that the FDA has failed to prove that any of Nuclomin's customers were actually misled by the product label, relying on United States v. 119 Cases . . . "New Dextra Brand Fortified Cane Sugar", 231 F.Supp. 551 (S.D.Fla.1963), aff'd, 334 F.2d 238 (5 Cir. 1964). This case simply held that the government failed to carry its burden of proof through its nutritional experts that the label used was misleading. Other courts have held that although admissible on the issue of whether a label is false or misleading, the fact that no purchasers have actually been misled is not a defense under the Act. United States v. Article of Food Consisting of 432 Cartons, 292 F.Supp. 839, 841 (S.D.N.Y.1968); United States v. One Device . . . The Ellis Micro-Dynameter, 224 F.Supp. 265, 268 (E.D.Pa.1963). Cf. United States v. Ninety-five Barrels—Apple Cider Vinegar, 265 U.S. 438, 44 S.Ct. 529, 68 L.Ed. 1094 (1924); United States v. Article —Consisting of 216 Cartoned Bottles, 409 F.2d 734, 740–742 (2 Cir. 1969); United States v. 47 Bottles—Jenasol RJ Formula "60", 320 F.2d 564 (3 Cir. 1963), cert. denied, 375 U.S. 953, 84 S. Ct. 444, 11 L.Ed.2d 313; United States v. Olsen, 161 F.2d 669, 671 (9 Cir. 1947), cert. denied, 332 U.S. 768, 68 S. Ct. 79, 92 L.Ed. 353.

■ In several contexts the claimant has portrayed Nuclomin as a safe or harmless product and, on the basis of its other nutritionally accepted ingredients, a beneficial dietary supplement. The safety of a product, however, cannot be a basis for substantiating the legality of a seized article. Numerous authorities have held that it is immaterial to a question of misbranding whether the condemned article is inherently dangerous or harmful or whether it may in some way be beneficial. See generally United States v. Diapulse Corporation of America, 457 F.2d 25, 28 (2 Cir. 1972); Tutoki v. Celebrezze, 375 F.2d 105, 107 n. 4 (7 Cir. 1967); V. E. Irons, Inc. v. United States, 244 F.2d 34, 43–44 (1 Cir. 1957); United States v. One Device, Intended For Use As A Colonic Irrigator, 160 F.2d 194, 200 (10 Cir. 1947); United States v. Six Dozen Bottles . . . Of "Dr. Peter's Kuriko", 158 F.2d 667, 668–669 (7 Cir. 1947); United States v. Device Labeled "Cameron Spitler Amblyo-Syntonizer", 261 F. Supp. 243, 245–246 (D.Neb.1966); cf. United States v. Kordel, 164 F.2d 913, 916–917 (7 Cir. 1947), aff'd, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948).

In United States v. Ninety-five Barrels . . . Apple Cider Vinegar, 265 U.S. 438, 44 S.Ct. 529, 68 L.Ed. 1094 (1924), the Supreme Court found a vinegar label describing its contents as "apple cider vinegar made from selected apples" to be misleading to the public because the seized product was made from dehydrated apples rather than from fresh apples—even though the contested vinegar was similar in color, taste and consistency to vinegar processed from fresh apple cider and equally wholesome. The Court explained:

"The statute is plain and direct. Its comprehensive terms condemn every statement, design, and device which may mislead or deceive. Deception may result from the use of statements not technically false or which may be literally true. The aim of the statute is to prevent that resulting from indirection and ambiguity, as well as from statements which are false. It is not difficult to choose statements, designs, and devices which will not deceive. Those which are ambiguous and liable to mislead should be read favorably to the accomplishment of the purpose of the act. The

statute applies to food, and the ingredients and substances contained therein." *Id.* at 442–443, 44 S.Ct. at 531.

We accept the well reasoned opinion of the district court. The Nuclomin label defines itself as a dietary supplement and lists the challenged ingredients among known nutritional vitamins and minerals. As the district court found, this ambiguity could represent by indirection that these elements contributed some additional benefit when in fact they do not.[3]

Judgment affirmed.

---

3. The claimant urges that an added consideration in judging whether the Nuclomin label is misleading is that Nuclomin is distributed only to doctors for their patients, not to the general public. However, Nuclomin is not a prescription drug, therefore, nothing prevents it from being sold to the public. Moreover, licensed physicians are not exempt from the Act, and the fact that a seized article may only be sold to or used by physicians does not stay the full thrust of the Act. United States v. Ellis Research Laboratories, Inc., 300 F.2d 550, 552–553 (7 Cir. 1962), cert. denied, 370 U.S. 918, 82 S.Ct. 1558, 8 L.Ed.2d 499 ; United States v. Device Labeled "Cameron Spitler Ambly Syntonizer", 261 F.Supp. 243, 246 (D.Neb. 1966) ; cf. Upjohn Company v. Finch, 422 F.2d 944, 951–954 (6 Cir. 1970).